UNITED STATES of America,
Plaintiff-Appellant,

v.

Karyn Rene WALTHER,
Defendant-Appellee.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Graciela BARBA-BARBA,
Defendant–Appellee.

Nos. 80–1125, 80–1370.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1980.
Decided Feb. 19, 1981.

---

**10.** Gredler stated that Omark could not manufacture an item profitably unless they could sell a high volume of the item.

Francis J. Diskin, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellant.

Howard Ratner, Seattle, Wash., on brief, for Barba-Barba.

Stewart P. Riley, Howard Ratner, Seattle, Wash., for Walther.

Before SNEED and ANDERSON, Circuit Judges, and EAST,* Senior District Judge.

J. BLAINE ANDERSON, Circuit Judge:

In these consolidated appeals, the government appeals the granting of the defendants' separate motions to suppress evidence obtained during a series of searches taking place on or about August 17, 1979. We affirm the rulings of the court below.

## I. BACKGROUND

Unless otherwise indicated, the following factual development has been gleaned from the district court's findings below.

On August 17, 1979, a woman's overnight case arrived at the Western Airlines baggage terminal at Seattle-Tacoma International Airport. The case had been shipped as a "Speed Pak" from San Diego and was addressed to a "Mrs. R. Nelson" of Vashon Island, Washington. Shortly after the case arrived, a Western Airlines employee named Hank Rivard examined the case by shaking it. Rivard found the case to be somewhat suspicious because it was lightweight, did not rattle when shaken, and was taped shut. He opened the case and found that it contained a white powder substance.

After discovering the white powder, Rivard contacted Special Agent Walt Brehm of the Drug Enforcement Administration. Brehm and several other DEA agents went to the Western terminal, where they observed the open case and white powder. A field test confirmed that the substance was cocaine. The case was then repacked with sugar, and resealed. Later that evening, the defendant Karyn Walther arrived, claimed the case, and was arrested in the airport's parking garage. Walther's arrest led to the seizure of other evidence from her purse and car. Apparently, defendant

---

* The Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

Barba-Barba was responsible for shipping the case to Seattle.

The disclosure of the contents of Walther's overnight case was not Rivard's first contact with the DEA. The DEA has maintained a confidential informant file on Rivard which relates mainly to his reporting suspicious individuals fitting the "drug profile" while working at the ticket counter. According to that file, Rivard was established as a confidential informant and issued an informant number in October 1973. Between 1973 and 1977, Rivard provided information to the DEA on at least eleven occasions for which he received payments in amounts ranging from $25.00 to $250.00, receiving a total of $800.00 during that period. Rivard's file was closed on October 27, 1977, while he was on leave of absence from Western Airlines. Rivard was never made aware that his file had been closed.

According to Rivard's testimony at the suppression hearing, he had opened approximately ten Speed Paks in the past and had frequently discovered illegal drugs. Though he had never been paid for information supplied in connection with Speed Pak openings, the DEA had never discouraged him from so doing and, according to the testimony of one agent, would have paid him had he ever discovered a significant amount of drugs. Rivard also testified that while he did not expect payment for notifying the DEA of the contents of Walther's case, he also had no reason not to expect payment.

Walther was indicted on one count of possession of cocaine with intent to distribute, one count of possession of marijuana with intent to distribute, and one count of conspiring with Barba-Barba to possess cocaine with the intent to distribute. Barba-Barba was indicted on one count of possession of cocaine with intent to distribute, and one count of distribution. Both defendants moved to suppress all evidence seized on August 17.

Following a suppression hearing on Walther's motion, the district court found that at the time Rivard opened the Speed Pak and summoned DEA agents, he was acting as "an instrument or agent" of the DEA. In addition to the findings recited above, the court found that in opening the Speed Pak Rivard was not carrying out a business purpose of his employer, his sole reason being his suspicion that the case contained illegal drugs. The court further found that Rivard probably opened the case with the expectation that he would be compensated by the DEA if he were to discover a significant quantity of illegal drugs. Accordingly, the court ruled that Rivard had been acting as an agent of the DEA at the time he opened the overnight case and that all evidence seized as a result of the search would be suppressed. The court subsequently ordered the same evidence suppressed in Barba-Barba's case on the basis of its findings in the Walther suppression hearing. These appeals followed.[1]

## II. *DISCUSSION*

The sole issue raised on appeal is whether the district court erred in finding that Rivard was acting as an instrument or agent of the DEA when he inspected the overnight case and discovered the hidden cocaine. The government vigorously attacks the district court's findings that Rivard had no legitimate business purpose in opening the case and that his sole motivation was the expectation of financial reward. The government also questions the court's legal conclusion that this particular combination of factors conclusively demonstrates that Rivard was acting as an agent.

■ Neither party has cited any case law dealing with the applicable standard of review in a case wherein the district court has ruled whether a private citizen was acting as an "agent" of the government for fourth amendment purposes. A district judge's

findings of fact in a suppression hearing are subject to the "clearly erroneous" standard. *See, e. g., United States v. Botero*, 589 F.2d 430, 433 (9th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). Because we find that the district court's ruling was proper under any standard, we decline to announce a definite standard for findings that a private citizen has acted as an "agent" of the government here.

■ A wrongful search or seizure by a private party does not violate the fourth amendment. *See, e. g., Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410, 417 (1980). However, where a private party acts as an "instrument or agent" of the state in effecting a search or seizure, fourth amendment interests are implicated. *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971). This court has recognized that there exists a "gray area" between the extremes of overt governmental participation in a search and the complete absence of such participation. *See United States v. Sherwin*, 539 F.2d 1, 6, n.5 (9th Cir. 1976) (en banc). The resolution of cases falling within the "gray area" can best be resolved on a case-by-case basis with the consistent application of certain general principles.

■■ While a certain degree of governmental participation is necessary before a private citizen is transformed into an agent of the state, *de minimis* or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny. The government must be involved either directly as a participant or indirectly as an encourager of the private citizen's actions before we deem the citizen to be an instrument of the state. *United States v. Gumerlock*, 590 F.2d 794, 800 (9th Cir.) (en banc),

---

1. The parties appear to be in agreement on appeal that the outcome of Barba-Barba's case is dependent upon Walther's case. Both Barba-Barba and the government have simply incorporated by reference the arguments made in *Walther.* No question has been raised regarding Barba-Barba's standing to challenge any of the searches. We assume for the purposes of this appeal that Barba-Barba does have standing, and that any ruling as to Walther is applicable also to Barba-Barba.

*cert. denied*, 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979). The requisite degree of governmental participation involves some degree of knowledge and acquiescence in the search. *United States v. Sherwin, supra*, 539 F.2d at 6.

Prior case law indicates the wide variety of factual situations to which these principles might be applied. A search made by airline employees pursuant to a federal anti-hijacking program may be considered a governmental search where the employee's actions fall within the federal guidelines. *See United States v. Canada*, 527 F.2d 1374 (9th Cir. 1975), *cert. denied*, 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976); *United States v. Davis*, 482 F.2d 893 (9th Cir. 1973). On the other hand, an airline employee's search of a passenger's luggage which exceeds the guidelines of the hijacking program may be regarded as a private search. *See United States v. Ogden*, 485 F.2d 536 (9th Cir. 1973), *cert. denied*, 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974), *cf. United States v. Gumerlock, supra*. Mere governmental authorization of a particular type of private search in the absence of more active participation or encouragement is similarly insufficient to require the application of fourth amendment standards. *See United States v. Goldstein*, 532 F.2d 1305 (9th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976); *cf. United States v. Stevens*, 601 F.2d 1075 (9th Cir.), *cert. denied*, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979).

The presence of law enforcement officers who do not take an active role in encouraging or assisting an otherwise private search has been held insufficient to implicate fourth amendment interests, especially where the private party has had a legitimate independent motivation for conducting the search. In *United States v. Gomez*, 614 F.2d 643 (9th Cir. 1979), this court ruled that the opening of a suitcase by an airline employee which apparently had been misplaced was a private search even though a county detective physically carried the suitcase to the employee's working area because of the airline's legitimate interest in identifying the owner of the luggage. In the same vein is *United States v. Humphrey*, 549 F.2d 650 (9th Cir. 1977), wherein the airline's interest in preventing fraudulent loss claims rendered an employee's search of an obviously damaged package private even though a police officer had suggested prior to the search that it would be a "good idea" to open the package. *See also, Gold v. United States*, 378 F.2d 588 (9th Cir. 1967). A search by a freight carrier, however, may be classified as governmental intrusion where carrier's employee engages in the search for the sole purpose of assisting the government. *See Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966) (en banc).

It is clear from the foregoing that two of the critical factors in the "instrument or agent" analysis are: (1) the government's knowledge and acquiescence, and (2) the intent of the party performing the search. These are the factors which have generated most of the controversy on this appeal and which now occupy our attention.

We cannot agree with the government's contention that the pertinent findings below were clearly erroneous. Though Rivard testified that he believed that a federal regulation gave the airlines the right to open any piece of luggage consigned to them for shipping, he also testified that the only reason why he opened the case was his suspicion that it contained illegal drugs. Thus, legitimate business considerations such as prevention of fraudulent loss claims were not a factor. The record contained sufficient evidence for the court to conclude also that Rivard opened the case with the expectation of probable reward from the DEA. Rivard acknowledged that there was no reason that he should not expect a reward, and the testimony of a DEA agent established that it would be reasonable for him to have such an expectation. Our review of the record, therefore, indicates that the evidence supports the district court's findings. We are thus satisfied that Rivard opened the package with the requisite mental state of an "instrument or agent."

We are also satisfied that Rivard's prior experience with the DEA provides proof of the government's acquiescence in the search. While the DEA had no prior knowledge that this particular search would be conducted and had not directly encouraged Rivard to search this overnight case, it had certainly encouraged Rivard to engage in this type of search. Rivard had been rewarded for providing drug-related information in the past. He had opened Speed Paks before, and did so with no discouragement from the DEA. The DEA thus had knowledge of a particular pattern of search activity dealing with a specific category of cargo, and had acquiesced in such activity.[2]

We emphasize the narrowness of our holding. It is dependent upon the trial court's finding of extensive contact between Rivard and the DEA and its finding on Rivard's motivation for opening the overnight case. The DEA either knew or should have known that Rivard had made it a practice to inspect Speed Paks, and had acquiesced in that practice.[3] We do not by this opinion diminish the duty of any private citizen to report possible criminal activity, nor do we frown upon the use of paid informants. We merely hold that the government cannot knowingly acquiesce in and encourage directly or indirectly a private citizen to engage in activity which it is prohibited from pursuing where that citizen has no motivation other than the expectation of reward for his or her efforts.

### III. CONCLUSION

The orders of the district court are AFFIRMED.

---

2. We believe that this degree of knowledge that Rivard was actively involved in illegal searches distinguishes this case from *United States v. Valen,* 479 F.2d 467 (3d Cir. 1973), *cert. denied,* 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974), wherein the freight company employee had in the past been paid merely for providing "information." Nothing in the *Valen* opinion suggests that the government knew of any propensity on the part of the employee to open and search luggage, and indeed there was no indication that the employee had ever illegally searched baggage on any prior occasion. In any event, the initial search in *Valen* was immaterial because the employee did not tell the

agents that he had opened the suitcases, but only that he thought he smelled marijuana. We also find *United States v. Luciow,* 518 F.2d 298 (8th Cir. 1975), distinguishable on similar reasoning.

3. The government notes in its brief that Rivard had not made official contact with the DEA for approximately two years prior to August 17, 1979. We do not find this fact persuasive. Rivard had been on leave of absence for at least part of this time, and had never been notified that his confidential informant file had been closed.