**UNITED STATES of America, Plaintiff,**

v.

**David Marcus WILLIAMS, Defendant.**

**CR No. 93–55–FR.**

United States District Court,
D. Oregon.

Aug. 2, 1993.

Jack C. Wong, U.S. Atty., Johnathan S. Haub, Asst. U.S. Atty., Portland, OR, for plaintiff.

David T. McDonald, Cross & McDonald, P.C., Portland, OR, for defendant.

## OPINION

FRYE, Judge:

On February 23, 1993, a federal grand jury returned an indictment charging defendant, David Marcus Williams, with the crime of possessing with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The matter before the court is the motion of Williams to suppress evidence (# 9).

## FINDINGS OF FACT

In late July of 1992, defendant, David Marcus Williams, a light skinned black male, brought a 1978 Chevrolet Monte Carlo automobile to a business called Battery Specialists for servicing. Ron Shaffer, co-owner of Battery Specialists, examined the vehicle and determined that its engine was frozen. Shaffer agreed to allow Williams to leave the vehicle on the premises of Battery Specialists for a few days so that Williams could arrange to have the vehicle towed away.

On Monday, August 3, 1992, Williams returned to Battery Specialists and asked if he could leave the vehicle there for a day or two more. Shaffer agreed to let Williams leave the Monte Carlo automobile at Battery Specialists until the following Sunday.

Shortly after Williams left Battery Specialists on August 3, 1992, Shaffer discovered that some money was missing from his business. Shaffer suspected Williams of taking the money. Shaffer called Williams at his residence, and when he got no answer, he left a message on the answering machine. Then he called the police. A uniformed police officer came to Battery Specialists in response to Shaffer's call. The police officer determined that the Monte Carlo automobile was registered to Forrest Sowle, a white male.

Sometime thereafter, Williams arranged for a towing service to remove the Monte Carlo automobile. Shaffer refused to release the vehicle to the towing service because he still believed that Williams had stolen money from Battery Specialists. Thereafter, Shaffer changed the locks on the vehicle and moved it into the garage at Battery Specialists.

On August 5, 1993, Mark Bigeagle, a property crimes detective with the Portland Police Bureau, went to Battery Specialists to investigate the theft of the money. Detective Bigeagle met with Ron Shaffer and Robert Schafer, an employee of Battery Specialists. Detective Bigeagle then searched the Monte Carlo automobile in order to 1) establish the identity of the person whom Shaffer believed committed the theft of the money; and 2) resolve, if possible, the apparent discrepancy between the race of the registered owner of the Monte Carlo and the race of the person who brought the vehicle to Battery Specialists. Detective Bigeagle did not have a search warrant or the permission of either Williams or Sowle to search the vehicle. Detective Bigeagle removed several items as he searched the interior of the vehicle and the trunk. Detective Bigeagle then left the premises of Battery Specialists.

Shortly thereafter, Robert Schafer began to replace the items which Detective Bigeagle had removed from the vehicle. One of the items was a gunny sack which had been removed from the trunk of the vehicle. When Schafer examined the gunny sack, he smelled the odor of marijuana. Schafer opened the gunny sack and a box found therein, which contained approximately one kilogram of marijuana.

When Detective Bigeagle returned to the police station, he contacted Colleen Sowle, the sister of Forrest Sowle. Colleen Sowle told Detective Bigeagle that Forrest Sowle had recently sold his car to David Marcus Williams. Detective Bigeagle obtained a photograph of Williams and prepared a photographic display to take to Battery Specialists. About this same time, Robert Schafer telephoned Detective Bigeagle and informed him that he had found a quantity of marijuana in a box inside of a gunny sack in the trunk of the vehicle. Detective Bigeagle went to Battery Specialists and identified the substance as marijuana by its smell and appearance.[1] Detective Bigeagle placed the marijuana in the property room at the police station. The following day, Detective Bigeagle removed a sample of the marijuana for analysis.

## CONTENTIONS OF THE PARTIES

Williams moves to suppress evidence of the marijuana seized from his vehicle. Williams contends that the marijuana was seized in violation of his rights under the Fourth Amendment to the United States Constitution because the government knew of and acquiesced in the search of the vehicle by Robert Schafer. Williams also contends that the tests conducted by the state crime laboratory are inadmissible as evidence against him because of the illegal search of the vehicle.

The government contends that 1) Williams lacks standing to contest the search; 2) the Fourth Amendment to the United States Constitution is not implicated because the search of the vehicle was conducted by a private party; and 3) the subsequent testing of the marijuana was not a search.

## ANALYSIS

### 1. Standing

■ In order for Williams to challenge the lawfulness of the search of the Monte Carlo automobile, he must first establish standing to do so by showing that he had a "legitimate expectation of privacy" in the automobile, and that this legitimate expectation of privacy was violated when the search was conducted. *Rakas v. Illinois,* 439 U.S. 128, 143 & n. 12, 99 S.Ct. 421, 430 & n. 12, 58 L.Ed.2d 387 (1978). Williams has demonstrated that he was the owner of the vehicle which was searched and from which the marijuana was seized; therefore, he has standing to challenge the search and seizure of the marijuana.

### 2. Testing of the Marijuana

■ Relying on *United States v. Mulder,* 808 F.2d 1346 (9th Cir.1987), Williams argues that the results of any tests conducted by the state crime laboratory must be suppressed because no warrant was obtained prior to submitting the marijuana for testing. In *Mulder,* the United States Court of Appeals for the Ninth Circuit found that the Fourth Amendment rights of the defendant were violated when the Drug Enforcement Administration conducted warrantless tests on pills legally seized from luggage left in the hotel room of the defendant. The court concluded that a warrant was required because the tests were conducted several days after the seizure and because the sophisticated tests conducted "could have revealed an arguably private fact." *Mulder,* 808 F.2d at 1348–49.

Here, Williams has not argued that the test conducted by the state crime laboratory could have revealed an arguably private fact. Moreover, unlike the pills at issue in *Mulder,* which may or may not have been contraband, the substance found by Robert Schafer in the gunny sack was readily identified as marijuana by both Robert Schafer and Detective Bigeagle. No warrant was required prior to submitting the marijuana to the state crime laboratory for testing. *See United States v. Jacobsen,* 466 U.S. 109, 123, 104 S.Ct. 1652, 1661, 80 L.Ed.2d 85 (1984).

### 3. Search and Seizure of the Marijuana

■ The government contends that because the marijuana was found in a search conducted by Robert Schafer, a private person, the court must deny Williams' motion to

---

**1.** Detective Bigeagle is a twelve-year veteran of the Portland Police Bureau. Based on his experience and training, Detective Bigeagle is able to identify marijuana visually and by its smell.

suppress. The activities of a private person do not implicate the Fourth Amendment unless that person is acting as an agent of the government. *See United States v. Miller,* 688 F.2d 652, 656 (9th Cir.1982). The United States Court of Appeals for the Ninth Circuit has identified two factors for a court to consider in deciding whether a private person is an agent of the government: "(1) the government's knowledge and acquiescence, and (2) the intent of the party performing the search." *United States v. Walther,* 652 F.2d 788, 792 (9th Cir.1981).

■ The court finds that Robert Schafer searched the automobile and the contents of the gunny sack on his own volition and without the knowledge, acquiescence or encouragement of Detective Bigeagle or any other police officer, and that he did not search the vehicle with the intent of assisting the government in a criminal investigation. Applying the test in *Walther* to the facts here, the court concludes that the search conducted by Robert Schafer was a search by a private person who was not an agent of the government.

Williams argues, however, that even if Robert Schafer was not an agent of the government, he found the marijuana only as a result of the earlier search conducted by Detective Bigeagle, which was an illegal search. The government argues that Detective Bigeagle's search of the Monte Carlo automobile was permissible under the vehicle exception to the requirement for a search warrant.

■ The vehicle exception to the search warrant requirement allows law enforcement officers to conduct a warrantless search of every part of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime. *United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982). Two justifications underlie the vehicle exception. *California v. Carney,* 471 U.S. 386, 392, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985). First, the mobility of vehicles make obtaining a warrant impractical. *See id.* at 393, 105 S.Ct. at 2070. Second, licensed vehicles are covered by a range of police regulation and, therefore, have a reduced expectation of privacy. *Id.*

Williams contends that the government may not invoke the vehicle exception here because the Monte Carlo automobile was immobile. The United States Court of Appeals for the Ninth Circuit has never addressed the precise issue of whether the vehicle exception applies to immobile vehicles. *United States v. Hatley,* 999 F.2d 392, 394 (9th Cir. 1993).

■ Several factors are relevant to the question of whether a vehicle falls within the vehicle exception: 1) the location of the vehicle; 2) whether the vehicle is readily mobile; 3) whether the vehicle is licensed; 4) whether the vehicle is connected to utilities; and 5) whether the vehicle has convenient access to a public road. *California v. Carney,* 471 U.S. at 394 n. 3, 105 S.Ct. at 2071 n. 3; *United States v. Hamilton,* 792 F.2d 837, 843 (9th Cir.1986).

■ The vehicle at issue here was in a locked garage to which Williams had no access; the engine of the vehicle was frozen; and the locks on the doors of the vehicle had been changed. Although it is not clear whether Detective Bigeagle knew of the condition of the engine or the locks, he did know that Ron Shaffer would not release the vehicle to Williams and that Ron Shaffer intended to keep the vehicle at Battery Specialists into the immediate future. Under the facts and circumstances here, reasonable persons would have known that the Monte Carlo automobile was immobile. *See Hatley,* 999 F.2d at 395 ("In matters of search and seizure, we apply an objective test of reasonableness: would the facts available to the officer at the moment warrant a person of reasonable caution to believe that the car was operable?").

A primary justification for the vehicle exception, the inherent mobility of motor vehicles, is not present here. Without mobility or other exigent circumstances, the government may not invoke the vehicle exception to the warrant requirement. The government has not met its burden to justify the warrantless search of the Monte Carlo automobile. Therefore, the search conducted by Detective

Bigeagle violated the rights of Williams under the Fourth Amendment.

█ The exclusionary rule prohibits the use of evidence seized through government violations of the Fourth Amendment. *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914). "[T]he exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is ... acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attentuated [sic] as to dissipate the taint.'" *Murray v. United States,* 487 U.S. 533, 536–37, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988) (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939)).

█ Detective Bigeagle removed numerous items from the Monte Carlo automobile, including the gunny sack which contained the marijuana. Detective Bigeagle did not replace the items he removed, but instead left them on the floor of the garage. Shortly after Detective Bigeagle left Battery Specialists, Robert Schafer started to put the items back into the vehicle and discovered the marijuana. The marijuana found by Robert Schafer was obtained as a direct result of the search conducted by Detective Bigeagle. Accordingly, the exclusionary rule bars the use of the marijuana as evidence of a crime.

## CONCLUSION

The motion of Williams to suppress (# 9) is granted.