UNITED STATES of America, Plaintiff–Appellee,

v.

Kelvin RAMSEY, Defendant–Appellant.

No. 02–5660.

United States Court of Appeals, Sixth Circuit.

Nov. 13, 2003.

Van S. Vincent, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, for Plaintiff–Appellee.

Gary W. Lanker, Law Office of Gary W. Lanker, Memphis, TN, Kelvin Ramsey, pro se, Forrest City, AR, for Defendant–Appellant.

BEFORE: KEITH, MARTIN, and SUTTON, Circuit Judges.

KEITH, Circuit Judge.

Defendant–Appellant Kelvin Ramsey ("Ramsey") appeals the district court's ruling denying his motion to suppress evidence obtained by the government. In his motion, Ramsey alleged that the opening of his luggage by a Southwest Airlines employee, who had applied to be a Drug Enforcement Administration ("DEA") informant, was an unreasonable search within the meaning of the Fourth Amendment. The district court denied Ramsey's motion, finding that the Southwest Airlines employee was not an informant for the DEA at the time the luggage was opened. For the reasons set forth below, we AFFIRM the district court's ruling.

## I. BACKGROUND

Ramsey entered a conditional plea of guilty in the district court, pursuant to Federal Rule of Criminal Procedure 11(a)(2), to a single count of an indictment charging him with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. In his conditional plea, Ramsey reserved the right to appeal from the district court's denial of his pretrial motion to suppress evidence obtained by the government.

On December 5, 2000, Ramsey flew from Phoenix, Arizona to Nashville, Tennessee on Southwest Airlines. After arriving at Nashville International Airport at around 1:00 p.m., Ramsey and some friends went to claim his one piece of luggage and they were told by Southwest's baggage claim representative, Fran Wikstrom ("Wikstrom"), that Ramsey's luggage had not arrived with his flight. Wikstrom told Ramsey and his friend that she needed Ramsey's ticket stub so that she could call the ramp router and find out where his bag was located. After Wikstrom returned Ramsey's ticket, Ramsey rushed out of the luggage area without filling out a lost luggage report. Ramsey's friend told Wikstrom that Ramsey would be waiting for the bag. The bag arrived on the next flight from Phoenix at approximately 1:45 p.m. When no one picked the bag up from the baggage belt, the bag was taken into the Southwest office.

Wikstrom opened the bag to obtain a description of items in the bag for the baggage tracking system. Upon opening the bag, Wikstrom observed a jacket and a box wrapped in contact paper. Wikstrom thought the situation was suspicious. Due to her suspicions, Wikstrom contacted her supervisor, Wendy McElhaney ("McElhaney"), to determine what to do about the bag. McElhaney told Wikstrom that she would contact the customer service manager, Brent Bean ("Bean"). After contacting Bean, McElhaney informed Wikstrom that Bean suggested that the box be taken to security and x-rayed to make sure it did not contain an explosive device. Wikstrom was told that if the item in the box did not appear to be a bomb, but could not be identified, the box should be opened to determine its contents.

Wikstrom saw DEA Task Force Agent Tim Hawn ("Agent Hawn") in her office and told him about the box. After talking with Wikstrom and observing the box, Agent Hawn presented a drug detection dog to the box. The dog did not make a positive indication for the odor of narcotics. Agent Hawn then obtained an ion-scanner to analyze the box. Agent Hawn did not direct Wikstrom to take any steps relating to the box or the luggage.

Wikstrom took the box from Ramsey's luggage to the security checkpoint, where it was run through the scanner. Security personnel informed Wikstrom that the items in the box appeared to be food or a food product. Wikstrom opened the box and saw eight packages containing white powder. After the box was opened and the packages found, Agent Hawn was contacted and informed that the box had been opened. Agent Hawn observed the white powder and believed that it was a controlled substance. Agent Hawn confirmed his suspicion with a field test, which gave a positive indication of methamphetamine.

On December 5, 2001, Wikstrom was not officially employed by the DEA as an informant. Wikstrom had previously assisted the DEA, however, by looking up reservations and giving them information. Wikstrom filled out paperwork to become a paid informant on December 1, 2001, but the DEA had not informed her of her acceptance at the time of the incident. Wikstrom became a paid informant for the DEA on December 12, 2001. On Decem-

ber 5, 2001, Agent Hawn knew that Wikstrom had been recruited to become a paid informant for the DEA. If a DEA informant finds money, the informant receives ten percent of the money recovered if a conviction is obtained. Informants do not receive any compensation for the recovery of drugs.

The district court found that Wikstrom became suspicious of Ramsey because Ramsey was anxious about his bag. The court concluded that Wikstrom told Ramsey he would need to fill out a form concerning his lost bag, and her suspicions were further aroused when she observed Ramsey rush, almost run, from the airport. The court found that Wikstrom then contacted her superiors, who instructed Wikstrom to have the bag x-rayed, and if she still could not identify exactly what was in the box, to open it. The court found Wikstrom was following Southwest procedures and that Southwest had its own interests in identifying what was in the box. The court further found that Wikstrom was not a DEA informant at the time she opened the box.

## II. DISCUSSION

The sole issue raised on appeal is whether the district court erred in finding that Wikstrom was not acting as an instrument or agent of the DEA when she inspected the box in Ramsey's luggage and discovered the methamphetamine. Ramsey attacks the district court's findings that Wikstrom had a legitimate business purpose in opening the box and argues that Wikstrom's sole motivation was the expectation of financial reward.

A district court's legal conclusions with respect to a motion to suppress are reviewed *de novo*. *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir.2001). A district court's findings of fact will be upheld unless clearly erroneous. *Id.* When reviewing a denial of a motion to suppress evidence, the appellate court must consider the evidence in the light most favorable to the government. *United States v. Wellman*, 185 F.3d 651, 654–55 (6th Cir.1999).

It is well-established that evidence obtained by a private search is not subject to the Fourth Amendment exclusionary rule. The Fourth Amendment "proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir.1985) (citing *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). For the Fourth Amendment to proscribe a search or seizure conducted by a private citizen, the defendant must show that: (1) "the police ... instigated, encouraged or participated in the search;" and (2) the private "individual ... engaged in the search with the intent of assisting the police in their investigative efforts." *Lambert*, 771 F.2d at 89.

Ramsey argues that Wikstrom opened his luggage because she was motivated by the prospect of a ten percent reward. Ramsey relies on *United States v. Walther*, 652 F.2d 788 (9th Cir.1981), to support his position. In *Walther*, an airline employee who was signed up as a confidential informant and had previously provided information to the DEA observed an overnight case which appeared suspicious. *Walther*, 652 F.2d at 790. Without consulting anyone, the employee opened the overnight case and found a white powdery substance. *Id.* The airline employee then contacted the DEA, who tested the substance and found it to be cocaine. *Id.* The court found the evidence inadmissible because the DEA knew or should have known that the employee would search

containers for illegal drugs because of its contact with the employee, and the employee's motivation probably was for financial reward. *Id.* at 792–93.

In this case, like in *Walther*, the DEA had a pre-existing relationship with Wikstrom. Wikstrom had previously assisted the DEA by looking up reservations and giving them information. On December 1, 2001, four days prior to the incident, the DEA approached Wikstrom about being a governmental informant. Wikstrom, however, was not officially employed by the DEA as an informant at the time of the allegedly-unlawful search. Moreover, the DEA had never asked Wikstrom to look out for a certain person or a certain bag. The DEA, therefore, would not have expected Wikstrom to search bags on the DEA's behalf. Wikstrom was following the instructions of her employer when she opened the box. Based on the testimony that informants only receive compensation for the recovery of money, it is also unlikely that Wikstrom was motivated by the potential for a ten percent reward. The box was wrapped in contact paper, which is often used to mask odors, and Wikstrom had been informed that the box contained food or a food like substance. Thus, at the time Wikstrom opened the box, it is unlikely that she was expecting to find money.

Based upon the foregoing, the district court did not commit clear error in finding that Wikstrom acted at the behest of her employer, Southwest Airlines, when she opened the box. Wikstrom spoke with her supervisors about the package and followed their instructions as to the actions to be taken. Wikstrom was acting in her capacity as a Southwest airlines employee at that time and not as a government agent. Accordingly, the district court properly denied Ramsey's motion to suppress.

### III.  CONCLUSION

For the foregoing reasons we **AFFIRM** the district court's judgment.