

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-23-2004

# Kartorie v. Dunham

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2330

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Kartorie v. Dunham" (2004). *2004 Decisions.* Paper 465.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/465

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 03-2330

WILLIS KARTORIE,
Appellant

v.

BRADLEY DUNHAM; WILLIAM TUCKER;
OFFICER SPACOFF; JOHN DOE, I;
JOHN DOE, II; YORK HOSPITAL

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 02-cv-00346)
District Judge: Hon. John E. Jones, III

Submitted Under Third Circuit LAR 34.1(a)
July 15, 2004

Before: SLOVITER, BARRY and WEIS, Circuit Judges

(Filed: July 23, 2004 )

OPINION OF THE COURT

SLOVITER, Circuit Judge.

## I.

Pursuant to 42 U.S.C. § 1983, the appellant, Willis Kartorie ("Kartorie"), sued Pennsylvania State Trooper William Tucker ("Tucker"), John Doe I (Dr. David Eitel), John Doe II[1], and York Hospital ("York") alleging that the defendants had violated his rights under the Fourth Amendment to be free of excessive force, unlawful searches and seizures, and invasions of privacy. Kartorie also sued Pennsylvania State Trooper Bradley Dunham ("Dunham") alleging malicious prosecution for filing a non-traffic summary citation for disorderly conduct not supported by probable cause in violation of Kartorie's Fourth Amendment rights.

The District Court granted the motions for summary judgment of all defendants except on the issue of material fact as to whether Tucker used excessive force against Kartorie. That claim went to trial and a jury returned a verdict in favor of Tucker. Kartorie appeals from the order granting the defendants' motions for summary judgment and the court's refusal to grant his post-trial motions and a new trial on the claim against Tucker.

The District Court had subject matter jurisdiction over Kartorie's Section 1983 claim pursuant to 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] John Doe II was never named and the District Court therefore dismissed all counts against that Defendant.

2

A.      Kartorie's Fourth Amendment Claims

On January 12, 2001, at around 7:30p.m., Pennsylvania State Trooper Tucker pulled over Kartorie on suspicion that Kartorie was driving under the influence of alcohol. Tucker placed Kartorie under arrest for Driving Under the Influence, Resisting Arrest, Possession of a Small Amount of Marijuana, Possession of Drug Paraphernalia, and Driving on the Right Side of Roadway.

Kartorie struggled when Tucker attempted to handcuff him. Kartorie testified that he was unable to place his right arm behind his back due to a stroke he had suffered some years before. Tucker claimed that Kartorie was uncooperative and screaming obscenities, which forced Tucker to spray Kartorie with pepper spray and wrestle him to the ground in order to place him in handcuffs.

Tucker read Kartorie his Miranda rights during the car ride to the police station. After Kartorie refused to submit to a blood alcohol content ("BAC") test, Tucker transported him to the York Hospital laboratory in order to have witnesses to this refusal. When Tucker and Kartorie reached the hospital, Tucker read Kartorie warnings pursuant to Commonwealth v. O'Connell, 555 A.2d 873 (Pa. 1989), that his driver's license would be suspended for one year if he refuses to take a breathalyzer test, and Kartorie again refused to submit to a BAC test.

At the Hospital's emergency department, Kartorie refused to provide any medical

history and refused all medical attention. Dr. David Eitel ("Dr. Eitel"), an emergency room doctor, observed that Kartorie appeared intoxicated, swayed while seated, had bloodshot eyes, slurred speech, and had alcohol odor in his breath. Kartorie also exhibited signs of irritability and uncontrollable anger that are indicative of hypoglycemia and/or intoxication. Dr. Eitel, in an attempt to rule out the possibility of hypoglycemia, ordered nurse Deborah E. Barnes to perform an Accu-Chek, a test requiring a pin prick on a patient's finger to draw a single drop of blood for testing the patient's blood sugar level. Dr. John W. Patterson, an expert for York, stated that Dr. Eitel's conduct in ordering the Accu-Chek test to rule out hypoglycemia was proper and within the medical standard of care. Tucker did not ask that the Accu-Chek test be performed on Kartorie and did not participate in deciding whether or not to administer the test.

When Kartorie verbally refused and then physically resisted the Accu-Chek test, he was wrestled to the ground and blood was taken from him to perform the blood sugar test. There was conflicting testimony as to who restrained Kartorie when the blood was extracted. Tucker and several members of the York Hospital staff testified at trial that Tucker did not participate in wrestling Kartorie to the ground. Kartorie testified that hospital security guards wrestled him to the ground and Tucker put a knee in his neck. After the blood test was administered, Kartorie was helped up from the floor. The test determined that Kartorie was not suffering from hypoglycemia and Kartorie was discharged from the York Hospital emergency department. Tucker testified that Kartorie

4

was in his custody at all times while at the hospital.

In his complaint, Kartorie alleged that York, Eitel, and Tucker violated his rights under the Fourth Amendment to be free of excessive force, unlawful searches and seizures, and invasions of privacy. After discovery, the District Court granted all of the defendants' motions for summary judgment. As to York, the court held that "the law provides no cause of action for vicarious liability for constitutional violations under the theory of respondeat superior." App. at 32-33. The court held that Dr. Eitel had a "legitimate and independent motivation" – that is, a purely medical evaluation – for directing that a nurse draw blood from Kartorie. App. at 38-39.

Finally, the court held that Tucker was entitled to qualified immunity with respect to Kartorie's claim that Tucker violated his civil rights by allowing private parties to take his blood against his will while he was in Tucker's custody. The court, however, denied Tucker's motion for summary judgment with respect to Kartorie's excessive force claim, ruling that there was an issue of genuine material fact as to whether or not Tucker restrained Kartorie at the hospital, placed his knee on Kartorie's neck, and whether Tucker's use of force, if true, was reasonable. The jury returned a verdict in favor of Tucker on Kartorie's use of force claims. The District Court denied Kartorie's post-trial motions.

B.    Kartorie's Malicious Prosecution Claim

Kartorie was taken from the York Hospital emergency department to the

Pennsylvania State Police Barracks. While using the public restroom, he dropped a paper towel on the floor. Both Tucker and State Trooper Dunham told Kartorie to pick up the paper towel, but Kartorie responded with obscenities and refused. He turned away from the lavatory, approached Dunham and Tucker and, with his penis exposed, threatened to urinate on them.

Dunham and Tucker escorted Kartorie back to his holding cell. Dunham then filled out a summary citation for Kartorie's disorderly conduct. A state district justice found him not guilty of disorderly conduct.

Kartorie's § 1983 complaint included a claim against Dunham for malicious prosecution for filing misdemeanor level charges arising from the restroom incident. The District Court granted Dunham's motion for summary judgment holding that no claim for malicious prosecution can be had for a summary citation.

**III.**

We exercise plenary review over a District Court's decision to grant summary judgment. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). We review a District Court's order denying a motion for a new trial for abuse of discretion unless the Court's denial is based on the application of a legal precept, in which case our review is plenary. See Smith v. Holtz, 210 F.3d 186, 200 (3d Cir. 2000).

**IV.**

A.     <u>The Accu-Chek Test</u>

Kartorie contends that the District Court erred in granting summary judgment in favor of the defendants for the Accu-Chek test being performed against his will. However, his brief makes no arguments specifically directed to the grant of summary judgment in favor of York Hospital. A mere passing reference to an issue is insufficient to bring that issue before us on appeal. <u>See</u> <u>Skretvedt v. E.I. DuPont De Nemours</u>, 2004 WL 1336274, at *6 (3d Cir. June 16, 2004). Even if Kartorie's challenge has not been waived, this claim against York cannot succeed because there is no vicarious, <u>respondeat superior</u> liability under § 1983. <u>C.H. ex rel. Z.H. v. Oliva</u>, 226 F.3d 198, 202 (3d Cir. 2000).

Kartorie's § 1983 claim against Dr. Eitel is similarly defective. A § 1983 plaintiff must establish that the deprivation of a right secured by the constitution or laws of the United States was caused by a person acting under color of state law. <u>Angelico v. Lehigh Valley Hosp., Inc.</u>, 184 F.3d 268, 277 (3d Cir. 1999). Such an act by a private person can be fairly attributable to the state only if the deprivation is caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible, and the party charged with the deprivation may fairly be said to be a state actor. <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 n.15 (1982).

7

Dr. Eitel was not a state official and was under no contract with the state. He also did not act in a manner chargeable to the state. Tucker, the only state official present when the Accu-Chek test was administered, did not participate in making the decision to perform the test on Kartorie, which was a medical decision made to rule out the possibility of hypoglycemia in accordance with the accepted medical standard of care.

Kartorie testified in his deposition that he heard a conversation between Tucker and Dr. Eitel, but he could not recall whether it took place before or after he was subdued and blood was taken against his will and, more important, he could not hear the content of the alleged conversation. This vague testimony cannot create a genuine issue of fact with the testimony of Tucker, Dr. Eitel, and other members of the York Hospital staff who testified that no such conversation transpired. Dr. Eitel's decision to perform the Accu-Chek test, therefore, was motivated by his own medical judgment and not as the result of any state action.

Nor did Dr. Eitel violate Kartorie's Fourth Amendment rights by performing the Accu-Chek test against his will. Dr. Eitel testified that the decision to perform that test was motivated solely by his professional medical judgment that the possibility of hypoglycemia needed to be eliminated. A search or seizure conducted by a private party does not violate the Fourth Amendment when the private individual has a "legitimate independent motivation" for conducting the search. United States v. Walther, 652 F.2d 788 (9th Cir. 1981). Because Dr. Eitel had a legitimate independent motivation for

8

ordering the Accu-Chek test, his conduct did not violate Kartorie's Fourth Amendment rights and summary judgment was appropriate.

Finally, Kartorie contends that the District Court erred in granting Tucker qualified immunity on Kartorie's claim alleging that Tucker violated his Fourth Amendment rights by allowing York Hospital personnel to draw blood against his will while he was in Tucker's custody. Kartorie seeks to rely on the decision in Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 278 (1990), where the Supreme Court stated, "The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." Because hypoglycemia can affect a person's judgment and render that person incompetent to make an informed medical decision, it was necessary for York Hospital personnel to make sure that Kartorie was competent to make a decision refusing to receive medical treatment. His wish was honored after it was determined that he was not suffering from hypoglycemia. The Pennsylvania statute, 75 Pa. Cons. Stat. § 1547, that provides a right to refuse to have blood drawn for chemical testing is not implicated because Kartorie's blood was not tested for the presence of any chemicals. We therefore conclude that Tucker did not violate Kartorie's Fourth Amendment rights in allowing the Accu-Chek test to take place.

B.    The Malicious Prosecution Claim

In order to state a claim for malicious prosecution, the plaintiff must be seized and

suffer a deprivation of liberty. <u>Gallo v. City of Phila.</u>, 161 F.3d 217, 222 (3d Cir. 1998). In <u>Gallo</u>, for example, the plaintiff's liberty was restricted in the following ways: he had to post a $10,000 bond, attend all court hearings including his trial and arraignment, contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania. <u>Id.</u> In contrast, Kartorie was already in police custody when he was given the summary citation for disorderly conduct. There was a summary trial, scheduled at his request, at which he was found not guilty. He was also not forced to attend any hearings because of the citation. Therefore, he was not seized, nor was his liberty restricted in any way as a direct consequence of the summary citation. It follows that there was no seizure as a result of Dunham filing the summary citation, Kartorie's Fourth Amendment rights were not violated, and the District Court did not err in granting Dunham summary judgment on Kartorie's claim for malicious prosecution.

C.    <u>Post-Trial Motions</u>

Kartorie contends that the District Court erred when, in denying his post-trial motions, it rejected his contention that he was entitled to argue at closing argument that Tucker's mere presence during the administration of the Accu-Chek test, without more, was sufficient to support a claim for excessive force.

The Supreme Court has held that a seizure for the purposes the Fourth Amendment can occur when by means of physical force or show of authority a police officer in some way restrains the liberty of a citizen. <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989).

10

Some Court of Appeals cases recognize excessive force claims where the force is expressed by means other than physical contact, and there was some show of authority or threat directed towards the victim. See, e.g., McDonald v. Haskins, 966 F.2d 292, 294 (7th Cir. 1992) (pointing a gun to the head of plaintiff and threatening to shoot could amount to a consitutional violation); Holland v. Harrington, 268 F.3d 1179, 1190 (10th Cir. 2001) (suggesting that using a SWAT team may constitute excessive force). Here, Tucker was present in the emergency department when Kartorie's blood was drawn for medical testing but there was no evidence that Tucker threatened Kartorie or used any force in an attempt to make him submit to the test. Kartorie's argument with respect to excessive force was a misstatement of the law and the District Court did not err in sustaining Tucker's objection.

## V.

For the reasons set forth, we will affirm the District Court's order granting summary judgment and denying Kartorie's post-trial motions.