Filed 1/25/16  P. v. Korby CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DONNA EDNA KORBY,<br><br>        Defendant and Appellant. | C076916<br><br>(Super. Ct. No. CM035909) |

Following the trial court's denial of her motion to suppress evidence and to quash and traverse a search warrant, defendant Donna Edna Korby pleaded no contest to the cultivation of marijuana.  (Heath & Saf. Code, § 11358 -- count 1.)  The trial court suspended imposition of sentence and placed defendant on probation for 36 months.

Defendant now contends the trial court erred in denying her motion to suppress evidence and to quash and traverse the search warrant because an employee of Pioneer Auto Body and Shipping (Pioneer Shipping), acting as an agent for law enforcement, unlawfully opened and searched defendant's package without a search warrant or legal justification.

Viewing the record in the light most favorable to the trial court's ruling, we conclude the trial court did not err in denying defendant's motion.

We will affirm the judgment.

1

BACKGROUND

We limit our review to the matters before the trial court when it heard the motion. (*United States v. Jacobsen* (1984) 466 U.S. 109, 112, fn. 2 [80 L.Ed.2d 85, 93, fn. 2] (*Jacobsen*); *In re Arturo D.* (2002) 27 Cal.4th 60, 77, fn. 18.)

Racquel Nolind, the operations manager of Pioneer Shipping, reported that a woman came to Pioneer Shipping to ship a package. Surveillance video showed defendant delivering the package to Pioneer Shipping, and an invoice receipt showed defendant's name. After defendant left, Nolind opened the package because she smelled the odor of marijuana coming from it.

It was the policy of Pioneer Shipping to open packages believed to contain contraband. A sign posted at Pioneer Shipping read, "PIONEER SHIPPING RESERVES THE RIGHT TO INSPECT ANY AND ALL PACKAGES TENDERED FOR SHIPPING. [¶] ALCOHOL-TOBACCO-FIREARMS-DRUGS ARE PROHIBITED TO BE SHIPPED VIA PIONEER SHIPPING. [¶] PROHIBITED ITEMS WILL BE DISPOSED OF OR TURNED OVER TO THE POLICE." Pioneer Shipping was an authorized Federal Express "ship center." Nolind testified that Pioneer Shipping's policy of opening packages was based on the terms and conditions of the contract between Pioneer Shipping and Federal Express. Those terms and conditions provided, "We may, at our sole discretion, open and inspect any shipment without notice." According to Nolind, the contract between pioneer Shipping and Federal Express made Pioneer Shipping responsible for everything it shipped, and Pioneer Shipping's Federal Express account would be at risk for shipping prohibited items.

When Nolind opened the package, she found a smaller package with six clear glass jars. The jars contained what appeared to be marijuana. Nolind contacted the Butte County Interagency Narcotics Task Force (Narcotics Task Force). Agent Nathan Henry responded to the call and Nolind showed Henry the contents of the package. Agent Henry did not manipulate the package before immediately identifying the substance

inside the glass jars as marijuana. He seized the jars and the marijuana. The marijuana had a total net weight of 65.29 grams.

Consistent with Pioneer Shipping's practice, Nolind sent the outer package to the recipient with a security note indicating that the package contained contraband and the contraband was turned over to the authorities.

Law enforcement officials subsequently executed a search warrant at the residence of defendant and Thomas Korby. Law enforcement officers seized approximately 112 pounds of marijuana bud, 53 pounds of marijuana shake, 35 pounds of marijuana on stalks, five pounds of marijuana bud and leaf on stalks, firearms, and over $23,000 in cash at the property.

At the suppression hearing, Nolind said she had opened packages on "maybe 10 to 15" occasions because she suspected they contained marijuana. She was familiar with the odor of marijuana because her parents kept marijuana in their home and smoked it. If Nolind suspected that a package contained a prohibited item, she would open the package to determine whether Pioneer Shipping could ship it. If a customer were to disclose that he or she was shipping marijuana, Nolind would give the item back and tell the customer that Pioneer Shipping could not ship marijuana. But if Nolind accepts a package for shipping and later finds that the package contains marijuana, she contacts law enforcement officials to take the marijuana. Nolind said she contacts law enforcement because she cannot ship the prohibited item, it would be illegal for her to possess marijuana, and she wants law enforcement to take the item off her hands.

Evidence was presented of at least 10 prior situations in which someone from Pioneer Shipping opened a package, discovered marijuana or other illegal drugs, and contacted the Narcotics Task Force. Nolind said she had a discussion with Narcotics Task Force Commander Carl Sturdy about her practice of opening packages, but Commander Sturdy never suggested whether Nolind should or should not open packages. Nolind testified that no Narcotics Task Force agent ever suggested that she

should do something differently. No one from law enforcement instructed her on what to do after she opened a package, no one ever told her that the items in a package constituted evidence and had to be handled in a certain manner, and no one ever promised her anything for helping law enforcement. Nolind did not receive anything from the government for finding marijuana in packages and Agent Henry never talked to Nolind about her practice of opening packages.

Defendant moved to suppress the evidence obtained from the package and the evidence obtained from the search of her residence. She argued that the warrantless search of the package by Nolind violated the Fourth Amendment because Nolind acted as an agent of the government. Defendant also sought to quash and traverse the search warrant, arguing that it was based on information obtained from the unlawful search of her package.

The trial court denied defendant's motion. The trial court found that law enforcement officers were not present when Nolind opened the package containing marijuana, and Nolind did not receive any direction from law enforcement officers to open the package. The trial court determined that Nolind's conduct in opening packages helped law enforcement and law enforcement officers thanked her for contacting them. Nevertheless, Nolind had a legitimate business reason for inspecting the packages she suspected contained contraband, namely her interest in protecting her Federal Express franchise. The trial court concluded that Nolind did not act as an agent of law enforcement when she opened defendant's package and no search warrant was required for Nolind's search.

Defendant pleaded no contest to cultivation of marijuana (Health & Saf. Code, § 11358 -- count 1).[1] The trial court dismissed the remaining counts, along with the

---

[1] Defendant's husband Thomas was charged as a codefendant, but his matter was dismissed on March 12, 2014.

firearms allegation (Pen. Code, § 12022, subd. (a)(1)), suspended imposition of sentence, and placed defendant on probation for 36 months.

## DISCUSSION

### I

Defendant contends the trial court erred in denying her motion to suppress evidence because Nolind acted as an agent of the Narcotics Task Force when she opened and searched the package containing marijuana without a search warrant or legal justification.

In reviewing an order denying a suppression motion, we defer to the trial court's factual findings if they are supported by substantial evidence, but we exercise our independent judgment in determining the legality of the search or seizure on the facts so found. (*People v. Tully* (2012) 54 Cal.4th 952, 979 (*Tully*).) The trial court is the fact finder in a proceeding to suppress evidence, and it is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences. (*Ibid.*) Accordingly, we consider the record in the light most favorable to the trial court's disposition and accept the trial court's resolution of disputed facts and its assessment of credibility. (*Ibid.*) We measure the reasonableness of a search or seizure by federal constitutional standards. (Cal. Const., art. I, § 28, subd. (f)(2); *People v. Schmitz* (2012) 55 Cal.4th 909, 916.)

The Fourth Amendment of the federal Constitution protects against unreasonable searches and seizures by the government. (U.S. Const., 4th Amend.) The Fourth Amendment does not apply to actions by private citizens, unless the private citizen acted as an agent or instrument of the government. (U.S. Const., 4th Amend.; *People v. Wilkinson* (2008)163 Cal.App.4th 1554, 1564 (*Wilkinson*).) Thus, private citizens do not violate the Fourth Amendment by independently opening a package and examining its contents, without a warrant, whether such invasion was accidental or deliberate and

5

whether it was reasonable or unreasonable. (*Jacobsen, supra*, 466 U.S. at pp. 114-115 [80 L.Ed.2d at p. 95].)

Whether a private citizen is acting as an agent of the government is an issue of fact. (*People v. Warren* (1990) 219 Cal.App.3d 619, 622-623 (*Warren*).) " 'Determining whether the requisite agency relationship exists "necessarily turns on the degree of the Government's participation in the private party's activities, . . . a question that can only be resolved 'in light of all the circumstances.' " [Citation.] This is . . . "a fact-intensive inquiry that is guided by common law agency principles." [Citation.] The defendant bears the burden of proving that an agency relationship exists. [Citation.]' " (*Wilkinson, supra*, 163 Cal.App.4th at pp. 1565-1566 [adopting federal standard].)

" 'In order to run afoul of the Fourth Amendment, . . . the Government must do more than passively accept or acquiesce in a private party's search efforts. Rather, there must be some degree of Government participation in the private search. . . . [¶] . . . [T]wo primary factors . . . should be considered in determining whether a search conducted by a private person constitutes a Government search triggering Fourth Amendment protections. These are: (1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation. [Citations.]' " (*Wilkinson, supra*, 163 Cal.App.4th at pp. 1566.)[2] With regard to the first factor, there must be some

---

[2]  Courts of Appeals in the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits have applied the factors described in *Wilkinson* in determining whether a private search implicates the Fourth Amendment. (*United States v. Gonzalez* (8th Cir. 2015) 781 F.3d 422, 427 [a search by a private party with no government knowledge or participation does not implicate the 4th Amend.]; *United States v. Benoit* (10th Cir. 2013) 713 F.3d 1, 9 [the government must in some way affirmatively instigate, orchestrate, encourage or exceed the scope of the private search to trigger the application of the 4th Amend.]; *United States v. Aldridge* (7th Cir. 2011) 642 F.3d 537, 541-542 [considering whether the government directed the private searcher, initiated the search, and offered the private searcher a reward]; *United States v. Bowers* (6th Cir. 2010) 594 F.3d 522, 526

6

evidence of government participation in or affirmative encouragement of the private search.  (*Wilkinson, supra,* 163 Cal.App.4th at p. 1567.)

Viewing the evidence in the light most favorable to the trial court's ruling and applying the two primary factors to this case, we conclude no trial court error occurred. There is no evidence that the Narcotics Task Force participated in or affirmatively encouraged Nolind's search of defendant's package.  Defendant concedes the Narcotics Task Force did not direct or encourage Nolind to open defendant's package.  There is no

---

[concluding that law enforcement agents were not present or involved in private actor's search]; *United States v. Jarrett* (4th Cir. 2003) 338 F.3d 339, 344, 346 (*Jarrett*) [the government must do more than passively accept or acquiesce in a private party's search efforts; there must be some evidence of government participation in or affirmative encouragement of the private search]; *United States v. Steiger* (11th Cir. 2003) 318 F.3d 1039, 1045; *United States v. Paige* (5th Cir. 1998) 136 F.3d 1012, 1017-1018; *United States v. Ford* (11th Cir. 1985) 765 F.2d 1088, 1090 [examining whether the government had preknowledge of the private search and whether government agents openly encouraged or cooperated in the search]; *United States v. Walther* (9th Cir. 1981) 652 F.2d 788, 791-792 (*Walther*) ["The government must be involved either directly as a participant or indirectly as an encourager of the private citizen's actions before we deem the citizen to be an instrument of the state."]; see *United States v. Jackson* (M.D. Pa. 2008) 617 F.Supp.2d 316, 325 & fn. 8 [noting that while the Second and Third Circuit Courts of Appeals had yet to articulate a test for determining whether a private individual acted as a government agent and the First Circuit Court of Appeals had rejected a test-based approach, eight of 10 courts of appeals have looked at two primary factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends]; *United States v. Pervaz* (1st Cir. 1997) 118 F.3d 1, 6 [rejecting any specific standard or test]; cf. *United States v. Silva* (1st Cir. 2009) 554 F.3d 13, 18 [stating that the First Circuit Court of Appeals had identified three factors as potentially relevant in deciding whether a private party acted as a government agent: the extent of the government's role in instigating or participating in the search, its intent and the degree of control it exercised over the search and the private party, and the extent to which the private party aimed primarily to help the government or to serve its own interests]; *United States v. Capra* (2d Cir. 1974) 501 F.2d 267, 272, fn. 4 [stating in dicta that search was not subject to the 4th Amend. because the government did not instigate the search and the search was motivated by a genuine concern on the part of railroad personnel for the safety of railroad property and employees].)

evidence that the Narcotics Task Force had prior knowledge of Nolind's search of defendant's package, was present during her search, or instructed her with regard to that search.

Although there was evidence that the Narcotics Task Force was aware of Nolind's practice of opening suspicious packages and that law enforcement agents thanked Nolind for calling the Narcotics Task Force on past occasions, mere knowledge and passive acquiescence by the government is not enough. (*Wilkinson, supra*, 163 Cal.App.4th at p. 1566; *Jarrett, supra,* 338 F.3d at pp. 344, 346.) Perfunctory expressions of gratitude by government officials are not enough to make Nolind a government agent. (*Jarrett, supra,* 338 F.3d at p. 346.) The fact that the Narcotics Task Force did not discourage Nolind's practice does not create an agency relationship. (*Id* at p. 347.)

In addition, substantial evidence supports the trial court's finding that Nolind opened defendant's package pursuant to Pioneer Shipping's security policy and for a reason that is independent of crime detection or prevention. Nolind said she opened packages she suspected contained prohibited items, including marijuana, in order to determine whether Pioneer Shipping could ship the package under its Federal Express contract. The trial court concluded Nolind's fear of endangering her Federal Express franchise was reasonable and sincerely held. Nolind testified that she contacted law enforcement once she determined a package contained marijuana because she understood that Pioneer Shipping could not keep the marijuana. Even if Nolind was motivated in part to stop crime, "it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals." (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 488 [29 L.Ed.2d 564, 595]; see *Wilkinson, supra*, 163 Cal.App.4th at p. 1568 [a dual motive for conducting a search will not necessarily bring the search within the 4th Amend.].)

Unlike Nolind, the airline employee in *Walther, supra,* 652 F.2d 788, a case cited by defendant, conducted a search because he expected a reward from the Drug

Enforcement Agency for doing so. (*Id.* at pp. 792-793.) The airline employee did not act out of business considerations such as prevention of fraudulent loss claims. (*Id.* at p. 792.)

The present case is more like *Warren, supra,* 219 Cal.App.3d 619. In that case, a United Parcel Service (UPS) employee opened a package he found suspicious and saw a white substance which was later determined to be methamphetamine. (*Id.* at pp. 621-622.) The employee informed UPS, which in turn contacted the authorities. (*Id.* at p. 622) Like Nolind, the UPS employee in *Warren* was not a paid government informant. (*Ibid.*) The trial court in *Warren* found the UPS employee was acting as a responsible employee and on behalf of the mail companies when he opened the suspicious package. (*Id.* at p. 623.) Substantial evidence supports the trial court's similar finding in this case. (RT 217-218) Defendant argues *Warren* is distinguishable because the employee in *Warren* did not communicate directly with law enforcement. But the fact that Nolind communicated directly with Narcotics Task Force agents does not alter her business-related motive for searching defendant's package.

Defendant relies on *People v. North* (1981) 29 Cal.3d 509 for the proposition that a private citizen may be deemed to act as a government agent when the government knowingly permits the citizen to conduct a search for the government's benefit and the government makes no effort to protect the rights of the person being searched. But as this court pointed out in *Wilkinson*, supra, 163 Cal.App.4th 1554, the test articulated in *North* is no longer good law in California following the adoption of Proposition 8 (Cal. Const., art. I, § 28, subd. (f)(2) [formerly Cal. Const., art. I, § 28, subd. (d), renumbered without substantive changes by vote of the people on Nov. 5, 2008]). (*Wilkinson*, *supra*, 163 Cal.App.4th at p. 1565.) "[T]o the extent *North* requires nothing more than the officer's knowledge and failure to protect the defendant's rights to attribute a private search to the government, such a standard is no longer valid." (*Wilkinson, supra*, 163 Cal.App.4th at p. 1565.) Contrary to defendant's assertion, *United States v. Sherwin*

9

(9th Cir. 1976) 539 F.2d 1 and *United States v. Goldstein* (9th Cir. 1976) 532 F.2d 1305 do not adopt a test similar to that stated in *North*. (*Sherwin, supra*, 539 F.2d at p. 6 and fn. 6 [does not state that a private citizen acts as an agent of the government when the government knows the citizen conducted a search, but the government makes no effort to protect the defendant's rights; finding no official involvement in a private search]; *Goldstein, supra,* 532 F.2d at p. 1311 [concluding that the government did not participate in the private actor's investigation].)

Nolind did not act as a government agent when she opened defendant's package. She acted as a private citizen. Any subsequent invasions by the government are tested by the degree to which the invasions exceed the scope of the private search. (*Jacobsen, supra,* 466 U.S. at p. 115 [80 L.Ed.2d at p. 95].) The Fourth Amendment is implicated only if the government exceeded the scope of the private search or used information with respect to which the expectation of privacy has not already been frustrated. (*Id.* at pp. 117-122 [80 L.Ed.2d at pp. 97-99] [finding that government action which did not exceed the scope of a private search did not constitute a search within the meaning of the 4th Amend., and taking control of the package and its contents was a reasonable seizure because it was apparent the package contained contraband].) Defendant does not contend that any search by law enforcement officers exceeded the scope of Nolind's search of the package.

We reject defendant's claim that the trial court erred in denying her suppression motion.

## II

Defendant also contends the trial court erred in denying her motion to quash and traverse the warrant for the search of her residence.

Defendant moved to quash and traverse the warrant for the search of her residence in the trial court on the ground that the warrant was based solely on the illegal search of the package by Nolind. Copies of warrants for the search of defendant's residence, and

for the search of her bank records, were attached to her motion. Defendant now challenges the warrant for the search of her residence on the same ground raised in the trial court.

We have rejected defendant's contention that the initial search of the package by Nolind violated the Fourth Amendment. The information obtained from Nolind's search was obtained lawfully and created a valid basis for a search warrant. The trial court, therefore, did not err in denying defendant's motion to quash and traverse the warrant.

DISPOSITION

The judgment is affirmed.


_____/S/_____
Mauro, J.


We concur:


_____/S/_____
Robie, Acting P. J.


_____/S/_____
Hoch, J.

11