957 So.2d 2 (2007)
STATE of Florida, Appellant,
v.
Donald MONINGER, Appellee.
No. 2D05-4568.
District Court of Appeal of Florida, Second District.
January 5, 2007.
Rehearing Denied February 26, 2007.
Bill McCollum, Attorney General, Tallahassee, and Chandra Waite Dasrat, Assistant Attorney General, Tampa, for Appellant.
Mark A. Goettel of Mark A. Goettel, P.A., New Port Richey, for Appellee.
SILBERMAN, Judge.
The State appeals an order suppressing evidence in the prosecution of Donald Moninger for lewd or lascivious molestation, capital sexual battery, and two counts of lewd or lascivious battery.[1] Because the trial court properly suppressed the challenged *3 evidence, two used condoms, we affirm the suppression order.
In his motion to suppress, Moninger alleged that on July 8, 2004, Deputy White, Detective Ewald, and Child Protective Investigator (CPI) Morgan responded to a sexual battery complaint at Moninger's residence. The alleged victim is Moninger's fifteen-year-old daughter. The motion stated that the daughter spoke with Detective Ewald and told him that "condoms were used in the bedroom" of the residence. Further, the daughter, upon Detective Ewald's prompting, went into the residence and returned with two condoms. The motion contended that Moninger "did not consent to the unlawful entrance and removal of the condoms" and that the daughter "was acting as an instrument of the police and, as such, Detective Ewald searched the Defendant's residence without permission of the Defendant." Based on his contention that the law enforcement officers improperly obtained the condoms, Moninger sought an order suppressing the condoms as evidence.
The trial court conducted a hearing on the motion to suppress. Although witnesses were available to testify at the hearing, the parties stipulated to the facts and did not present any testimony or other evidence. The stipulated facts expanded on the allegations of Moninger's motion. Deputy White and Detective Ewald responded to Moninger's residence, where his daughter also lived, to investigate an allegation of child molestation. CPI Morgan was present and was going to remove the daughter from the residence to shelter care. While outside the residence, Detective Ewald conducted a brief interview with the daughter and asked her if there was any evidence to substantiate her claim. She responded that she believed there were "a couple of condoms in the house."
Detective Ewald and CPI Morgan "told the victim to go inside and start packing" her belongings because she was going to be removed from the home. They also told her that if she wanted to, she could "grab the condom. And, she did grab the condoms on her way out after she had packed her belongings." The daughter retrieved two condoms from the trash can in Moninger's room inside the residence and gave them to the detectives. The daughter had "access" to Moninger's room, and the room had never been locked. Finally, although "[t]he detectives had never been told not to enter the premises prior to the obtaining of the condoms" and consent was never "denied to Detective Ewald prior to the detective telling the victim to go inside and start packing," the stipulation confirmed that "consent was never requested from the Defendant[.]"
At the conclusion of the hearing, the parties agreed to provide memoranda to the trial court. The legal issue presented to the court was whether the daughter was acting as an instrument or agent of the State when she retrieved the used condoms from the trash can in Moninger's bedroom and gave them to the detectives. In its memorandum in opposition to the motion to suppress, the State acknowledged as undisputed facts that Detective Ewald spoke with the daughter while Deputy White stood by with Moninger and that Detective Ewald gave the daughter "a bag in which to place the condoms if she chose to obtain them."
In its order granting the motion to suppress the condoms, the trial court stated, in pertinent part, as follows:
Stipulated facts include the investigating officers not only telling the alleged victim to go into Defendant's residence to get her belongings but also telling her that she could remove two condoms that the defendant had allegedly used. In *4 addition, the State now acknowledges in its memorandum that the officers also gave the child a bag in which to place the condoms. One can hardly imagine a stronger hint, whether made to an adult or a child. If the officers had simply obtained a search warrant or told the victim to go into the residence and get her belongings and she had, with no encouragement by the officers, removed the condoms on her own, the Court would have seen no violation of the defendant's constitutional protections against State action. Unfortunately, the actions of a private individual, such as the alleged victim in this case, become actions of the government when, as in this case, the government becomes involved ". . . indirectly as an encourager of the private citizen's actions . . .". Treadway v. State, 534 So.2d 825 (Fla. 4th DCA 1988). Clearly, the officers "encouraged" the child/victim to obtain the evidence that they could not have validly obtained without permission or a proper search warrant. The record reflects no private interests that were furthered by the alleged victim's actions in removing the condoms and delivering them to the investigating officers. Although the State urges the court to find that there was a private interest of the alleged victim which was furthered by the alleged victim's actions, it does not seem logical to find that the private interests of the victim in obtaining corroboration of the alleged offense is any different than the State's interest in obtaining evidence of the crimes the State has charged. It is clear that the decision to remove the alleged victim from the defendant's home had been made prior to her entering the home and obtaining the condoms. She was told by Child Protective Investigator Morgan to enter the home for purposes of obtaining her belongings because she was being removed from the defendant's home. This decision having already been made, the alleged victim needed no corroboration to further the goal the State assigns to her. Furthermore, there is no evidence in the record that the alleged victim was motivated by anything other than the obvious "hints" provided by Det. Ewald.

(Second and third emphasis added.)
The trial court also noted there was no evidence that Moninger, who was present at the scene, had consented to any search, and there was no evidence that the daughter gave consent or was asked to give consent. Based on the facts that were presented and the issue that was squarely before the trial courtwhether the daughter was acting as an instrument or agent of the Statethe court granted the motion to suppress.
In this appeal, the State argues that the daughter did not act as a government agent but acted out of her own free will. The State suggests that she gave the condoms to the officers to further her own purpose, that is, to substantiate her claim of illegal sexual contact with Moninger. The stipulated facts do not support the State's argument that the daughter was not an instrument or agent of the State or that she retrieved the condoms for her own purpose. In Treadway v. State, 534 So.2d 825, 827 (Fla. 4th DCA 1988), the court recognized that "while a wrongful search and seizure by a private party does not violate the fourth amendment, when a private party acts as an `instrument or agent' of the state in effecting a search and seizure, fourth amendment interests are implicated." The court explained that "[t]he government must be involved either directly as a participant or indirectly as an encourager of the private citizen's actions before we deem the citizen to be an instrument of the state." Id. (quoting United *5 States v. Walther, 652 F.2d 788, 791 (9th Cir.1981)). In State v. Iaccarino, 767 So.2d 470, 475 (Fla. 2d DCA 2000), this court stated as follows:
The test for determining whether private individuals are agents of the government is whether, in consideration of the circumstances, the individuals acted as instruments of the state. To determine whether a private individual acts as an instrument of the state, courts look to (1) whether the government was aware of and acquiesced in the conduct; and (2) whether the individual intended to assist the police or further his own ends.
(Citations omitted.)
Here, the facts of record establish that the daughter's action in retrieving the condoms was precipitated by Detective Ewald's suggestions and encouragement and that the interest being fulfilled was the law enforcement interest in obtaining evidence to support a criminal prosecution. The daughter was being removed from the home based on what the officers already knew, and nothing suggests that the daughter, of her own motivation, considered taking the condoms to substantiate that she had been molested or for any private purpose. As recognized in Treadway, the Fourth Amendment is implicated if the sole purpose of a private search is to further a government interest. 534 So.2d at 827. The stipulated facts do not suggest that the daughter retrieved the condoms for any purpose other than the officers' desire to acquire evidence without the necessity of a search warrant or requesting and obtaining consent. Indeed, nothing in the record suggests that the daughter would even have thought to retrieve the condoms without the detective's suggestion that she take that specific course of action. Because the record supports the trial court's conclusion that the daughter was acting as an instrument or agent of the State, we conclude that the trial court properly granted Moninger's motion to suppress the condoms.
The State also asserts that the daughter "had joint-ownership rights over the used condoms if the condoms were used during sexual contact in which she was a party," that "she still had joint control over the house and could have legally provided the condoms" to the officers, and that Moninger "had no legitimate expectation of privacy." However, the State makes these assertions in bare-bones fashion, without record support or citation of authority. The stipulation indicated that the condoms were in Moninger's bedroom and that the daughter had "access" to the bedroom, but no evidence was presented as to the daughter's "right" to enter Moninger's room and to remove the condoms from the trash can. There was also no evidence that the daughter shared that room with Moninger, that she had "joint control" over the house, or that she had "joint-ownership" of the used condoms.[2] In its memorandum in opposition to the motion to suppress, the State suggested that the daughter "had authority to consent to law enforcement entry, as well as law enforcement search, if either had been requested." (Emphasis added.) In its order, the trial court correctly noted that there was "no evidence that the alleged victim gave any consent to search to the officers or was requested to do so[.]"
It is well established that the officers would need a search warrant or an exception *6 to the warrant requirement, such as consent, to validly enter Moninger's residence to search for evidence. See V.H. v. State, 903 So.2d 321, 322 (Fla. 2d DCA 2005). Here, the officers could have sought a search warrant or could have asked for Moninger's consent to search, but they chose neither option.[3] Further, there is no evidence that the daughter consented or had authority to consent to a search of the home, the bedroom, or the trash can in the bedroom. The evidence is undisputed that the daughter was told by law enforcement to go into the home to pack her belongings. At the same time, Detective Ewald told her she could "grab" the condoms if she wanted to, and he gave her a bag in which to put the condoms.
Although the dissenting opinion suggests that the victim could not have been a State agent, it gives short shrift to the stipulated facts: the daughter reentered the home at the direction of law enforcement; law enforcement encouraged her to enter Moninger's room to get the condoms; and law enforcement gave her a bag in which to place the evidence that law enforcement believed would assist them in proving criminal conduct.
As to the burden of proof, the dissent suggests that Moninger did not meet his burden to show that the seizure of evidence was as a result of unreasonable government action. The test in a case such as this is whether the person who obtained the evidence was acting as an agent or instrumentality of law enforcement. See Treadway, 534 So.2d at 827. The Treadway court recognized that when "a dual purpose for the search exists such that the private person is also furthering his own ends, the search generally retains its private character." Id. In Treadway, the court determined that a dual purpose existed when an insurance agent provided records to the Florida Comptroller's Office. Id. The agent worked for Treadway, and the agent accessed his own investment file, although the office rules prohibited the agent from reviewing those files. The documents assisted in a prosecution for organized fraud and grand theft, but the facts established that the agent had his own reasons to look into the files, including concern over his investment and to determine whether the investment program was being handled properly. Id. at 826.
Nothing in the record here suggests that the daughter retrieved the condoms to further her own purposes. Although the dissent speculates as to possible private purposes  perhaps the daughter might have wanted the condoms as evidence for a possible civil suit against her father or for use in a dependency actionthe record does not reflect that the daughter considered retrieving the condoms for any private purpose. Instead, the State stipulated to facts that reflect the daughter acted solely at the direction and encouragement of law enforcement. Specifically, the daughter retrieved the condoms at the suggestion of Detective Ewald and delivered the condoms to him. Further, the daughter was already being removed from the home to shelter care when Detective Ewald suggested that she gather the evidence. Notably, this court in Iaccarino stated that the determination involves "whether the individual intended to assist the police or further his own ends." 767 So.2d at 475 (emphasis added). Thus, the intent of the individual is a necessary consideration. Here, the stipulated facts reflect that the daughter's intent was to obtain evidence for Detective Ewald.
*7 Finally, the dissent suggests that suppression of the condoms does not serve to suppress DNA evidence on the condoms. The State has not made this argument, and the record does not reflect that any DNA evidence is, in fact, contained in or on the condoms. Further, it seems self-evident that the entire purpose of Moninger's motion is to challenge the legality of law enforcement's seizure of the condoms and whatever evidence is in or on them. In any event, our review is to determine whether the trial court properly resolved the issue presented to it, based on the record evidence and the parties' arguments, and not to speculate regarding other theories or strategies that might have been pursued.
Therefore, because the trial court properly granted Moninger's motion to suppress, we affirm the suppression order.
Affirmed.
SALCINES, J., Concurs.
ALTENBERND, J., Dissents with opinion.
ALTENBERND, Judge, Dissenting.
I dissent. The issue in this case is whether a fifteen-year-old girl, who is the alleged victim of a sexual battery by her father, is an agent of the State who violates her father's Fourth Amendment rights and commits an unconstitutional seizure if she re-enters her home to retrieve two condoms that have been discarded in a trash can, when those condoms were allegedly used inside her body during illegal sexual intercourse. The only reason that she could be considered an agent of the State is that the police suggested that while she was retrieving her other personal belongings in order to move to shelter she could retrieve the condoms and place them in a bag that the police provided.
I conclude that this case is controlled by Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and that Mr. Moninger failed to establish an unreasonable search and seizure by the government that would support suppression of this evidence. I also conclude that the stipulated evidence does not support that Mr. Moninger's daughter acted as an agent or instrument of the state, given that she had objectively independent reasons to retrieve this evidence from her home and to preserve that evidence against her father. I have found no case treating such a victim of a crime as a state agent under similar circumstances and truly doubt the United States Supreme Court would apply its reasoning in Coolidge to distinguish this case and exclude this evidence. Finally, the critical evidence in this case is DNA evidence that may or may not exist. On remand, if that evidence is determined to exist, I would require Mr. Moninger to file a separate motion to suppress that evidence.

I.
The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is, of course, a basic principle of Fourth Amendment law that searches and seizures by law enforcement inside a home without a warrant are presumptively unreasonable. Brigham City, Utah v. Stuart, ___ U.S. ___, ___, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006). However, the Fourth Amendment is wholly inapplicable to a search or seizure, even an unreasonable one, that is effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official. United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).
*8 Two things are thus clear from the undisputed facts in this case. If Mr. Moninger's daughter had retrieved the condoms from the home "wholly on her own initiative," without any suggestion from law enforcement that she do so, the condoms would have been admissible in evidence. See, e.g., Coolidge, 403 U.S. at 487, 91 S.Ct. 2022. Conversely, if the law enforcement officers had entered the home without a warrant and without the consent of one or perhaps both of the occupants and seized the condoms, the seizure would have violated the Fourth Amendment. See, e.g., Kirk v. Louisiana, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). The question presented here, though, is whether the combination of the officer's suggestion and the daughter's voluntary actions combined in such a manner to require a court to conclude that the government performed an unlawful seizure of the condoms. I conclude this case is controlled by Coolidge, 403 U.S. 443, 91 S.Ct. 2022, and that Mr. Moninger has not established that the government effected an unreasonable search or seizure under the facts to which Mr. Moninger stipulated.
Initially, I note that the burden of proof or persuasion in this case rested on Mr. Moninger, not on the State. Mr. Moninger bore the burden of establishing that the seizure of evidence in this case was a result of unreasonable government action. See Treadway v. State, 534 So.2d 825, 827 (Fla. 4th DCA 1988); see also United States v. Reed, 15 F.3d 928, 931 (9th Cir. 1994); United States v. Koenig, 856 F.2d 843, 847 (7th Cir.1988) (citing Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939)). Because Mr. Moninger has not met his burden, I would reverse the order suppressing the condoms seized by his daughter.
The United States Supreme Court has recognized that in some circumstances, the actions of a private citizen may be deemed to be the actions of the government. Coolidge, 403 U.S. at 487, 91 S.Ct. 2022. Ironically, the Supreme Court first recognized this principle in a case in which it held the principle did not apply. Id.
In Coolidge, police officers appeared at Mr. Coolidge's home to investigate his potential role in a crime. Mr. Coolidge was not home. The officers spoke with his wife and asked her whether Mr. Coolidge had any guns. The wife responded that he did and offered to get the guns from the bedroom. The officers indicated they would accompany the wife, and they proceeded with the wife into the bedroom and ultimately accepted possession of the guns she offered to them. Id. at 486, 91 S.Ct. 2022.
The Supreme Court noted, "Had Mrs. Coolidge, wholly on her own initiative, sought out her husband's guns and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence." Id. at 487, 91 S.Ct. 2022. However, Mr. Coolidge contended that the conduct of the police officers was such as to make Mrs. Coolidge's actions the actions of the police for the purposes of the Fourth Amendment.
"The test," the Supreme Court held, "is whether Mrs. Coolidge, in light of all the circumstances of the case, must be regarded as having acted as an `instrument' or agent of the state when she produced her husband's belongings." Id. The Court noted that if the exclusionary rule applied to this evidence, "it must be upon the basis that some type of unconstitutional police conduct occurred." Id. at 488, 91 S.Ct. 2022. In holding that no "unconstitutional police conduct" occurred, the Supreme Court reviewed the actions of the officers and concluded that the officers behaved appropriately in their investigation: When *9 they first appeared at the home they had no intention of conducting a search or seizure; they properly questioned Mrs. Coolidge; and once they became aware of the evidence they did not compel or coerce Mrs. Coolidge to obtain possession of the guns. Id. at 488-89, 91 S.Ct. 2022. The Supreme Court added that there was nothing "constitutionally suspect" in the incentives a private citizen might feel to cooperate with the police. Id. at 488, 91 S.Ct. 2022. As such, the Supreme Court held the items relinquished by Mrs. Coolidge were not subject to suppression.
The only perceivable differences between the facts presented in Coolidge and the facts presented here are the age and relationship of the daughter to Mr. Moninger and the fact that the daughter did not herself originate the idea of retrieving the condoms, but simply agreed to do so when the officer explained that it might assist the investigation or prosecution. I conclude that these distinct facts do not permit a finding of unconstitutional police conduct requiring the application of the exclusionary rule. The facts to which Mr. Moninger agreed suggest that, like Mrs. Coolidge, the fifteen-year-old daughter had open access to the home, the father's bedroom, and to the discarded condoms her father had allegedly used in a sexual battery against her. Given these facts and the facts known to the police officers after they interviewed the daughter, I find nothing suspect or sinister in their informing the daughter that if she had access to this important evidence and could retrieve it, it would assist in a prosecution.
Before the trial court and in his arguments on appeal, Mr. Moninger relied upon the Fourth District's opinion in Treadway, 534 So.2d 825, to support his argument that Mr. Moninger's daughter acted as an agent of law enforcement. In Treadway, an insurance agent sifted through private investment files of his employer and provided government officials with some of the records he discovered, even though office rules prohibited the insurance agent from reviewing those files. The Treadway court focused on the level of government participation in the insurance agent's search and seizure, which was minimal, and the motive of the insurance agent in performing the search and seizure, which was to further his own ends as well as those of the government. The court concluded that based upon these two factors the insurance agent was not an "agent of law enforcement" when he performed the search and seizure.
Treadway in turn relied upon the Ninth Circuit's opinion in United States v. Walther, 652 F.2d 788 (9th Cir.1981). In Walther, an airline employee, who occasionally acted as an informant to law enforcement regarding drug activity, opened a customer's package based upon his suspicion that the package might contain contraband. Id. at 790. In assessing whether the airline employee acted as an agent of the police, the Ninth Circuit held that there were two "critical factors" in the "instrument or agent" analysis: (1) the government's knowledge and acquiescence in the search and (2) the intent of the party performing the search. Id. at 792. Based upon a review of these two factors, the Ninth Circuit held the airline employee acted as an agent of law enforcement, and the drugs he found were properly suppressed. Id. at 792-93. See also State v. Iaccarino, 767 So.2d 470 (Fla. 2d DCA 2000) (applying Walther to hold that off-duty police officers' searches of musical festival patrons violated the Fourth Amendment).
Each of these cases, however, arose in the context of inappropriate behavior on the part of the private individual. In each case, the private individual was improperly *10 invading the privacy of the suspect. In other words, the private search or seizure was itself "unreasonable," and thus the government's knowing participation in or encouragement of such an unreasonable search or seizure would be in violation of the Fourth Amendment.
In Coolidge and in this case, however, the private individual's conduct is not itself "unreasonable." According to the stipulated facts, there was nothing wrong with Mr. Moninger's daughter returning into her home and retrieving not only her personal belongings but also the condoms she and her father had allegedly recently used and discarded. The analysis in Walther assumes some unwarranted intrusion by the private actor vis-à-vis the suspect; here, as in Coolidge, there was none. See also United States v. Novick, 450 F.2d 1111 (9th Cir.1971) (applying Coolidge to hold that officers who responded to a suicide and asked the homeowner if there were any guns in the home did not violate the Fourth Amendment when they accompanied the homeowner into a guest room to seize guns, revealing other contraband belonging to the guest).
My conclusion is supported by the Illinois Supreme Court's opinion in People v. Heflin, 71 Ill.2d 525, 17 Ill.Dec. 786, 376 N.E.2d 1367 (1978), the one case I have discovered with facts somewhat akin to the unique facts of this case. In Heflin, law enforcement arrested the defendant upon suspicion of murder and informed the defendant's brother of the arrest and charges. One of the police officers specifically inquired about some potentially incriminating letters the defendant might possess and asked the brother if he would get the letters for the police. The defendant thereafter personally asked his brother to retrieve the defendant's car and other personal belongings and to store them. The brother gathered the belongings as the defendant requested, and after a follow-up call from law enforcement, the brother provided the incriminating letters to the police. Id. at 1373.
The Illinois Supreme Court stated:
The defendant argues that the present situation is different from that in Coolidge, because here there were specific requests for his possessions. We do not think this factor is dispositive. Here, as in Coolidge, we can find no evidence of unreasonable police conduct or coercive influence over the private individual who turned the defendant's possessions over to the police. Considering the entirety of the evidence, we think it sound to conclude that Jon Heflin decided to voluntarily turn the letters over to the police without their persuasion. The letters were obtained by Jon Heflin at the insistence of the defendant, not the police, and Jon Heflin discussed the letters with the defendant's attorney, who gave him no specific orders not to turn them over. Moreover, the nature of the initial request and the follow-up requests by the police indicate that no pressure, subtle or otherwise, was exerted on Jon Heflin at any time. Consequently, we conclude that Jon Heflin acted independently and that the search and seizure of defendant's possessions was without the requisite degree of police involvement necessary to invoke the constitutional guarantees.
Id. at 1374.
Under the analysis of Coolidge, Heflin, and similar cases, I conclude that no unconstitutional police conduct occurred in this case. I would therefore reverse the trial court's order granting the motion to suppress.

II.
I have concluded above that Coolidge controls this case and that the analysis *11 applied in Treadway and Walther, arising as it did in the face of unreasonable private searches and seizures (i.e., ones in which the private party was invading an expectation of privacy of the suspect), is perhaps not appropriately suited to this context. However, even if this court were to apply the reasoning of Treadway and Walther, I am convinced that the daughter cannot be deemed to have acted as a government agent in this context because the daughter had objective independent reasons to retrieve evidence from her own home and to preserve that evidence against her father. This is especially true because her father had no expectation of privacy that would require a warrant for such an intrusion by his daughter.
As discussed earlier, the Ninth Circuit has held that the two "critical factors" to be considered in the "instrument or agent" analysis are: (1) the government's knowledge and acquiescence in the search and (2) the intent of the party performing the search. Walther, 652 F.2d at 792. The second prong of this analysis is admittedly a little confusing to me. It does not test the conduct of the police but rather the motivation of their borrowed servant. It seems to me that this test suggests that, even though one may act, in part, as an agent of the state, the Fourth Amendment does not render a seizure unconstitutional if the person has an objective, independent private reason to seize the property.
If the facts in this case involved a single, adult female police officer who lived with her father and was raped by him in the family's home, no one would suggest that she needed to obtain a warrant to collect the condoms from the trash. The fact that she was a sworn, trained state agent and, as a result, understood the value of evidence would not override her right as a person and victim to save and preserve the evidence of a crime committed inside both her own home and her own body.
Mr. Moninger's daughter, of course, is not trained in the law and may have subjectively lacked the knowledge to understand these valid personal reasons to gather up evidence against her father. Interestingly, if she had had a lawyer, the lawyer's advice to collect the evidence would not have been state action and would not have transformed her into a state agent. Just as a police officer's actions under the Fourth Amendment are usually tested with an objective standard, Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the same should be true for this teenager. Objectively, she had an independent private reason to remove these condoms from her home as evidence in a civil action against her father and in a dependency proceeding to place her in a safe environment.
Again, this analysis is all the more compelling in light of Mr. Moninger's reduced expectation of privacy in the condoms. Thus, I am not suggesting that the daughter's independent private reasons would necessarily allow her to invade the privacy of the accused if she were also acting in part as a state agent. If this case involved an accused who lived in another residence, she could not burglarize that dwelling or the accused's business office at the suggestion of the police to obtain evidence useful to both the police and herself. Perhaps if Mr. Moninger had established that he took the used condoms and locked them in a closet in his bedroom, the result would be different. Here, Mr. Moninger has not presented any evidence to establish that he had an expectation of privacy vis-à-vis his daughter in the items he discarded in the trash can in the unlocked bedroom of this mobile home.
*12 Thus, although I conclude that Coolidge applies and that the analysis presented in Treadway and Walther is not adequate to deal with a case in which the victim seizing a personal item in her own home is the purported state agent, I also conclude that the daughter's seizure of this evidence, which has independent utility for her, is not the action of a state agent even under the analysis in Treadway and Walther.

III.
Finally, I am not convinced that the majority's decision conclusively decides the issues presented by the seizure of these condoms. The fact that an adult male has two used condoms in his bedroom trash can, without more, merely suggests that he is sexually active. That fact is not overly relevant to establish that he is molesting his daughter. If anything, the slight probative value of the condoms might be out-weighed by their prejudicial effect. See § 90.403, Fla. Stat. (2004). Thus, the evidence that has been suppressed at this point is evidence that may not even have been admissible at trial.
The critical, probative evidence that may actually have been gathered by the deputies on July 8, 2004, is a sample of the daughter's DNA on the exterior surface of the condom. It is not clear that such evidence exists. If that evidence exists, it could be very helpful in proving her claim. Ironically, if the condoms were tested and did not contain evidence of the daughter's DNA, Mr. Moninger would probably want to put that fact into evidence to try to establish that his daughter's story was a fabrication.
No one has expressly moved to suppress the results of DNA testing of genetic material located on the exterior of the condoms. The trial court has not explicitly suppressed that evidence. I assume that the daughter in this case would be permitted at trial to testify that her father used a condom during these sexual batteries even if the actual condom were suppressed because that testimony would not be fruit of any poisonous tree. Admittedly, it is a much closer question, but I am not convinced that the suppression of the condoms would necessarily require suppression of evidence of her DNA on the exterior of the condoms. I find it hard to conclude that she would be a state agent when she was entering her own home to retrieve a sample of her own DNA on a discarded item. On remand, if that evidence is determined to exist, I would require Mr. Moninger to file a separate motion to suppress that evidence.
NOTES
[1] The State amended the information after the suppression hearing to add the count of capital sexual battery and the two counts of lewd or lascivious battery.
[2] The State cites no authority for the proposition that the victim of a crime becomes a joint owner of an instrument or property used by the perpetrator during the commission of a crime. For example, does a stabbing victim become a joint owner of the knife because the victim's blood is on it?
[3] There is no explanation why the officers did not procure a search warrant. Deputy White was standing outside the residence with Moninger. Detective Ewald could have applied for a search warrant while Deputy White stayed with Moninger.