DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KEVIN OSORIO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-4407

[March 2, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barbara McCarthy, Judge; L.T. Case No. 11017015 CF10A.

Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.

KLINGENSMITH, J.

Kevin Osorio appeals his convictions for possession of cannabis under twenty (20) grams, possession of drug paraphernalia, and trafficking in gamma-butyrolactone ("GBL").[1] We write to address three of the issues Osorio has raised on appeal.

---

[1] The Legislature has defined the crime of trafficking in GBL as follows:

> Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 1 kilogram or more of gamma-butyrolactone (GBL), as described in s. 893.03(1)(d), or any mixture containing gamma-butyrolactone (GBL), commits a felony of the first degree, which felony shall be known as "trafficking in gamma-butyrolactone (GBL)" . . . .

§ 893.135(1)(i)1., Fla. Stat. (2011).

First, Osorio claims that the trial court erred by ruling that testimony regarding conversations between Osorio and the State's confidential informant, and among detectives and the informant, was inadmissible hearsay evidence. He argues that because the informant acted as an agent of the State, the informant's statements were admissible as statements of a party-opponent under section 90.803(18)(d), Florida Statutes. Second, he asserts that the trial court abused its discretion by preventing him from mentioning during closing argument the State's decision not to call the informant as a witness. Third, he contends that the trial court erred when it declared a testifying forensic chemist to be an expert in the presence of the jury. We agree with Osorio on these points, and therefore reverse for a new trial.

Osorio found himself in possession of a large amount of the prescription drug Xyrem, a liquid medication used for narcolepsy, after his former roommate moved out and left the substance in the residence. Not knowing what the drug was, Osorio contacted a former co-worker to obtain more information. Osorio put a sample of the liquid into vials supplied by the co-worker so the co-worker could test it for verification purposes. Osorio later learned that the liquid was gamma-hydroxybutyric acid, otherwise known as "GHB," a chemical derivative of GBL.[2]

A few months later, the co-worker agreed to become a confidential informant after he was taken into custody for trafficking in cocaine. In exchange for his cooperation, he was told that any assistance he gave to law enforcement would be presented to the state attorney's office as a factor for consideration at the time of his sentencing. It was during the course of his participation in this substantial assistance program that he offered Osorio's name and agreed to help detectives build a case against him.

Shortly thereafter, the police recorded a series of phone calls wherein Osorio and the co-worker arranged a transaction to sell the GBL. When Osorio arrived at the location designated for the sale, he was arrested and found with two cell phones, marijuana, a scale, and several vials of GBL in his vehicle. Before Osorio's trial, the co-worker was sentenced to probation due to his substantial assistance to law enforcement, despite facing up to thirty years in prison and a minimum mandatory sentence for his charges.

---

[2] Like trafficking in GBL, trafficking in GHB is also a first degree felony. § 893.135(1)(h)1., Fla. Stat. (2011). Both GBL and GHB are classified as schedule I controlled substances. § 893.03(1)(d), Fla. Stat. (2011).

During cross-examination, the trial court refused to allow one of the detectives to testify as to whether the co-worker told him that he had received a vial of liquid from Osorio in order to identify the substance. When Osorio testified, the trial court prevented him from recounting conversations with the co-worker, which included the co-worker's statements about what to do with the vials he gave to Osorio, and details concerning the potential drug transaction.

During closing argument, when Osorio's counsel tried to make a point about the State's decision not to call the informant as a witness in the trial, the trial judge held a sidebar conference sua sponte, and the following exchange ensued:

> THE COURT: Let me go through a couple of issues. Counsel should not be commenting on the other side's not bringing witnesses in who are available to both sides. *Haliburton*.[3]

> [DEFENSE COUNSEL]: In dealing with entrapment, I shouldn't be interrupted in this fashion, particularly where there was no objection on behalf of the State. This is very prejudicial to my client.

> THE COURT: The Court has an obligation at any time during anyone's closing, if it feels the defense could have called the CI also, and that's why I called you sidebar. Okay? And that's why I am noting for the record it is improper. Whether they called him or not, you could have called him. He was sitting out there.

> [DEFENSE COUNSEL]: He wasn't a listed defense witness.

> [PROSECUTOR]: Judge, the only thing I was going to point out, there was no evidence put on that he was sitting out in the hall and I would certainly object to that evidence --

> . . . .

> THE COURT: . . . As to him being out there, and being called, it's improper and I'd like you to move on and I'll note your objection for the record.

---

[3] *Haliburton v. State*, 561 So. 2d 248 (Fla. 1990).

The trial court did not strike the comments regarding the State's choice not to call the co-worker as a witness, and did not give a curative instruction to the jury regarding these comments. Osorio was ultimately convicted of trafficking in GBL, possession of marijuana under twenty (20) grams, and possession of drug paraphernalia. This appeal followed.

1. Admissibility of Confidential Informant's Statements

In general, rulings on the admission or exclusion of evidence are reviewed for an abuse of discretion, "limited by the rules of evidence." *Lucas v. State*, 67 So. 3d 332, 335 (Fla. 4th DCA 2011) (quoting *Tengbergen v. State*, 9 So. 3d 729, 736 (Fla. 4th DCA 2009)). "[W]hether evidence falls within the statutory definition of hearsay is a matter of law, subject to *de novo* review." *Id.* (alteration in original) (quoting *Burkey v. State,* 922 So. 2d 1033, 1035 (Fla. 4th DCA 2006).

As Judge Learned Hand once wrote, "Courts have countenanced the use of informers from time immemorial; in cases of conspiracy, or in other cases when the crime consists of preparing for another crime, it is usually necessary to rely upon them or upon accomplices because the criminals will almost certainly proceed covertly." *United States v. Dennis*, 183 F.2d 201, 224 (2d Cir. 1950). This case provides an opportunity to explain the relationship that exists between the State and those informants acting under substantial cooperation agreements.

Under section 914.28(2):

(a) "Confidential informant" means a person who cooperates with a law enforcement agency confidentially in order to protect the person or the agency's intelligence gathering or investigative efforts and:
1. Seeks to avoid arrest or prosecution for a crime, or mitigate punishment for a crime in which a sentence will be or has been imposed; and
2. Is able, by reason of his or her familiarity or close association with suspected criminals, to:
a. Make a controlled buy or controlled sale of contraband, controlled substances, or other items that are material to a criminal investigation;
b. Supply regular or constant information about suspected or actual criminal activities to a law enforcement agency; or

4

c. Otherwise provide information important to ongoing criminal intelligence gathering or criminal investigative efforts.

§ 914.28(2)(a), Fla. Stat. (2011).

Generally, an agent is one who consents to act on behalf of some person, with that person's acknowledgment, and is subject to that person's control. *Goldschmidt v. Holman,* 571 So. 2d 422, 424 n.5 (Fla. 1990) ("Essential to the existence of an actual agency relationship is (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent."). When determining whether private citizen confidential informants have acted in a manner that makes them agents of the government, the court must apply a similar test when asking "whether [the informant], in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state . . . ." *Coolidge v. New Hampshire,* 403 U.S. 443, 487 (1971). This includes examining the purpose of the conduct in which the actor engaged.

Under certain situations, informants can be considered agents of the State, especially when acting in accordance with agreements made with authorities. *See Davis v. State*, 928 So. 2d 1089, 1125 (Fla. 2005) (holding that defendant failed to establish jailhouse informant was acting as agent of the State where informant did not testify at trial, and there was conflicting testimony as to whether informant was negotiating a deal with the State). In other words, "[t]he government must be involved either directly as a participant or indirectly as an encourager of the private citizen's actions before we deem the citizen to be an instrument of the state." *Treadway v. State*, 534 So. 2d 825, 827 (Fla. 4th DCA 1988) (quoting *United States v. Walther*, 652 F.2d 788, 791 (9th Cir. 1981)). The Second District has held:

> The test for determining whether private individuals are agents of the government is whether, in consideration of the circumstances, the individuals acted as instruments of the state. To determine whether a private individual acts as an instrument of the state, courts look to (1) whether the government was aware of and acquiesced in the conduct; and (2) whether the individual intended to assist the police or further his own ends.

*State v. Iaccarino,* 767 So. 2d 470, 475 (Fla. 2d DCA 2000) (citations omitted); *see also Dufour v. State,* 495 So. 2d 154, 159 (Fla. 1986) (holding

that inmate was not a State agent where the inmate "approached the authorities on his own initiative," and, after speaking with authorities, the inmate "was neither encouraged nor discouraged from obtaining further information").

Here, the police encouraged the co-worker's involvement in the investigation, which involved setting up a controlled buy with Osorio as a target offender.[4]  He agreed to arrange a drug purchase from Osorio in hopes of securing a favorable report from detectives and obtaining substantial assistance credit in his prosecution for cocaine trafficking.  In so doing, he was working under the supervision and direction of the detectives working the case.

The co-worker's statements to both Osorio and the detectives were made in furtherance of that objective.  He engaged in these interactions with Osorio at the behest of the detectives with the hope of obtaining a possible future benefit.  *State v. Moninger*, 957 So. 2d 2, 5 (Fla. 2d DCA 2007) (holding that victim was agent of the State where her actions were brought about by officer's suggestions and encouragement, law enforcement had an interest in obtaining the evidence to support a criminal prosecution, and nothing suggested that victim, of her own volition, contemplated obtaining the evidence in order to corroborate the crime, or for any private purpose).

A confidential informant working under the supervision and direction of an investigating law enforcement agency is an agent of the State; therefore, we agree with Osorio that the co-worker acted on behalf of the State and within the scope of his agency.  As such, the hearsay exception provided by section 90.803(18) applies to the co-worker's out-of-court statements, which under the evidence code are not inadmissible if they are offered against a party and are:  "[t]he party's own statement[s] in either an individual or a representative capacity," or "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment thereof, made during the existence of the relationship." § 90.803(18)(a), (d), Fla. Stat. (2011).  The court's evidentiary ruling denied Osorio the ability to have these statements presented to the jury, thereby unduly restricting him in the pursuit of his entrapment defense.  This was error.  *See Garland v. State*, 834 So. 2d 265, 266-67 (Fla. 4th DCA 2002) (recognizing that in a criminal case, the state was a party-opponent of the defendant).

---

[4] "'Target offender' means the person suspected by law enforcement personnel to be implicated in criminal acts by the activities of a confidential informant." § 914.28(2)(e), Fla. Stat. (2011).

6

2. Defense's Comment on the State's Failure to Call the Confidential Informant as a Witness

The trial court also erred by prohibiting defense counsel from commenting on the State's failure to call the co-worker as a witness. The witness's identity and his role as an informant were known to both the State and the defense before trial. While the trial court properly focused on whether the co-worker was available to both parties in deciding whether to allow the defense to comment on the State's decision not to call him, *Haliburton*, 561 So. 2d at 250 (stating that when "witnesses are equally available to both parties, no inference should be drawn or comments made on the failure of either party to call the witness." (quoting *State v. Michaels*, 454 So. 2d 560, 562 (Fla. 1984))), under the circumstances in this case the trial court improperly concluded that the informant was equally available to both parties.

We have previously stated that "it is permissible in argument to comment on a party's failure to call a witness where it is shown 'that the witness is peculiarly within the party's power to produce and the testimony of the witness would elucidate the transaction.'" *Jean–Marie v. State*, 993 So. 2d 1160, 1161 (Fla. 4th DCA 2008) (quoting *Haliburton*, 561 So. 2d at 250). A witness is "peculiarly within the party's power to produce" when "the witness was an informer associated with the government in developing the case against the defendant and there was no indication at trial of any break in the association." *Datilus v. State*, 128 So. 3d 122, 125 (Fla. 4th DCA 2013) (quoting *Martinez v. State*, 478 So. 2d 871, 872 (Fla. 3d DCA 1985)). By virtue of his status as an agent of the State, the State had the ability to produce the co-worker as a witness for trial, thus making him peculiarly within the State's control and susceptible to comment by defense counsel when not called to testify for the prosecution. *See Terry v. State*, 668 So. 2d 954, 963-64 (Fla. 1996) (finding no indication from the record that the informant "was not equally accessible to both parties," and noting that the defense called the informant to testify, thereby undermining the argument that the informant was "'peculiarly within the [state's] power to produce' and that his testimony would have 'elucidate[d] the transaction'" (alteration in original)); *see also Molina v. State*, 71 So. 3d 234, 237 (Fla. 2d DCA 2011) (holding that where the confidential informant was "peculiarly within the State's power to produce" and their testimony would have further "explain[ed] the transaction for which [the defendant] was being charged," the defense should not have been prevented from commenting on "the State's failure to call the [confidential informant] as a witness").

Because the co-worker directly connected law enforcement to Osorio and facilitated the drug buy, his testimony would have served to elucidate the transaction. *See Harris v. State*, 636 So. 2d 137, 137 (Fla. 3d DCA 1994) (affirming trial court's decision to prohibit comment on State's failure to call confidential informant where, despite the fact that informant was within the State's "power to produce," their "testimony would not have 'elucidate[d] the transaction'" because the informant "had only a minimal relationship with the case at all and none whatsoever with the defendant himself" (alteration in original)).

### 3. Trial Court's Declaration that Witness Qualified as an Expert

Finally, we address the trial court's declaration to the jury that the State's testifying forensic chemist was "an expert in the field, and [could] give opinion testimony, and hypotheticals in the field of being a forensic chemist." In *Tengbergen*, we explained that the suggested procedure is for a trial court to refrain from openly declaring that a witness is an expert:

> While Tengbergen contends that the court erred by not "qualifying" McNevin as an expert, the trial court determined that the requirements for the introduction of expert testimony were met when it overruled the defense objection that McNevin was not qualified as an expert. Although the court did not explicitly state to the jury that it found the witness qualified as an expert, *the court reasonably followed the suggestion of this court that a court should refrain from telling the jury that the witness's testimony is being admitted as "expert testimony," because that may be tantamount to the court commenting on the credibility of a witness. See Alexander v. State*, 931 So. 2d 946, 951 (Fla. 4th DCA 2006) ("the better procedure would have been to permit the witness to testify without reference to his or her status as an expert"). *See also Chambliss v. White Motor Corp.*, 481 So. 2d 6, 8 (Fla. 1st DCA 1985) ("[I]t is not necessary for the court to state that the witness is qualified as an expert. In fact, it is questionable whether it is proper procedure for a court to expressly declare a witness an 'expert' because the jury may infer from such declaration that the court is placing its approval on the opinions of the witness."). The court appropriately ruled, and it committed no error.

9 So. 3d at 737 (emphasis added).

Many courts from other jurisdictions have similarly concluded that such practices are disfavored. *See, e.g., United States v. Johnson*, 488 F.3d 690, 697-98 (6th Cir. 2007) (noting its disapproval of the tender/ acceptance process); *United States v. Bartley*, 855 F.2d 547, 552 (8th Cir. 1988) (stating that "[a]though it is for the court to determine whether a witness is qualified to testify as an expert, there is no requirement that the court specifically make that finding in open court upon proffer of the offering party. Such an offer and finding by the Court might influence the jury in its evaluation of the expert and the better procedure is to avoid an acknowledgment of the witnesses' expertise by the Court"); *Luttrell v. Commonwealth*, 952 S.W.2d 216, 218 (Ky. 1997) (stating that "[g]reat care should be exercised by a trial judge when the determination has been made that a witness is an expert. If the jury is so informed such a conclusion obviously enhances the credibility of that witness in the eyes of the jury. All such rulings should be made outside the hearing of the jury and there should be no declaration that the witness is an expert"); *State v. McKinney*, 917 P.2d 1214, 1232-33 (Ariz. 1996) (remarking that "[b]y submitting the witness as an expert in the presence of the jury, counsel may make it appear that he or she is seeking the judge's endorsement that the witness is to be considered an expert. . . . In our view, the trial judge should discourage procedures that may make it appear that the court endorses the expert status of the witness. The strategic value of the process is quite apparent but entirely improper.").

When a court declares that a witness is an "expert" in his or her field, it confers an imprimatur of authority and credibility, thereby inordinately augmenting the witness's stature while simultaneously detracting from the court's position of neutrality. *See* § 90.106, Fla. Stat. (2011) ("A judge may not sum up the evidence or *comment to the jury upon the weight of the evidence, the credibility of the witnesses*, or the guilt of the accused." (emphasis added)); *see also Tengbergen*, 9 So. 3d at 737 (noting that a trial court should not characterize witness testimony as expert testimony because it effects the witness' credibility in the eyes of the jury); *Jacques v. State*, 883 So. 2d 902, 905 (Fla. 4th DCA 2004) (stating that "[w]hile a judge may take some initiative to clear up uncertainties in the issues in a case, it is error for the judge to make any remark in front of the jury that might be interpreted as conveying the judge's view of the case or an opinion on the weight, character, or credibility of the evidence"); *Whitaker v. State*, 742 So. 2d 530, 530 (Fla. 1st DCA 1999) (holding that "the trial court's sua sponte declaration that [the witness] qualified as an expert witness constituted an improper comment on the credibility of the witness"); *Fogelman v. State*, 648 So. 2d 214, 219 (Fla. 4th DCA 1994) ("While a trial court has great latitude in controlling the proceedings and witnesses in the courtroom, the trial court must exercise great care in not intimating to

the jury the court's own opinion as to the weight, character or credibility of a witness.").

The problem associated with this "tender and accept" process has been specifically identified in the advisory committee notes to Federal Rule of Evidence 702, which establishes when a qualified expert may testify as such in the federal courts. The committee stated:

> *The use of the term "expert" in the Rule does not, however, mean that a jury should actually be informed that a qualified witness is testifying as an "expert."* Indeed, there is much to be said for a practice that prohibits the use of the term "expert" by both the parties and the court at trial. *Such a practice "ensures that trial courts do not inadvertently put their stamp of authority" on a witness's opinion, and protects against the jury's being "overwhelmed by the so-called 'experts.'"* Hon. Charles Richey, *Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Criminal and Civil Jury Trials*, 154 F.R.D. 537, 559 (1994) (setting forth limiting instructions and a standing order employed to prohibit the use of the term "expert" in jury trials).

Fed. R. Evid. 702 advisory committee's note to 2000 amendment (emphasis added).

The American Bar Association has also frowned upon the "tender and accept" process before the jury, opining that "[t]he court should not, in the presence of the jury, declare that a witness is qualified as an expert or to render an expert opinion, and counsel should not ask the court to do so." *Trial Evidence in the Federal Courts: Problems and Solutions*, SN063 ALI-ABA 839, 878 (Feb. 28-29, 2008). The commentary accompanying this provision on expert testimony states:

> It is not uncommon for a proponent of expert testimony to tender an expert witness to the court, following a recitation of the witness's credentials and before eliciting an opinion, in an effort to secure a ruling that the witness is "qualified" as an expert in a particular field. *The tactical purpose, from the proponent's perspective, is to obtain a seeming judicial endorsement of the testimony to follow. It is inappropriate for counsel to place the court in that position.*

10

*Id.* (emphasis added).[5]

While this court and others have repeated the recommendation that trial courts ought to refrain from directly declaring the expert status of a witness in front of the jury, we recognize this has been interpreted by some as merely a suggestion of judicial practice, and not a hard-and-fast rule. *Tengbergen,* 9 So. 3d at 737; *see also Alexander,* 931 So. 2d at 951. Today we clarify that such practice is impermissible. Judges must not use their position of authority to establish or bolster the credibility of certain trial witnesses.

The State has not shown that the errors discussed above were harmless because, as the beneficiary of the errors, it cannot "prove beyond a reasonable doubt that the error[s] complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *Farrell v. State,* No. 4D13-2589, 2015 WL 2214148, at *4 (Fla. 4th DCA May 13, 2015) (quoting *State v. DiGuilio,* 491 So. 2d 1129, 1135 (Fla. 1986)).

Accordingly, we reverse this case for new trial.

*Reversed and Remanded for New Trial.*

GROSS and GERBER, JJ., concur.

\*           \*           \*

**Not final until disposition of timely filed motion for rehearing.**

---

[5] *Trial Evidence in the Federal Courts: Problems and Solutions* was prepared by the American Law Institute and later adopted and reprinted by the ABA. SN063 ALI-ABA, at 842. Although it includes the disclaimer that "[t]he accompanying commentary has not been adopted by the ABA House of Delegates and, as such, should not be construed as representing the policy of the Association," *id.,* the comments are nonetheless helpful and guide the reader's understanding and interpretation of the provisions.