WETHERELL, J.
Appellant, John Norfleet, was convicted of first-degree murder and aggravated child abuse after his four-year-old daughter died following a brutal “whooping” that he gave her with a board. We find no merit in the two issues raised by Norfleet and write only to address his contention that it was fundamental error for the trial court to declare certain state witnesses to be “experts” in front of the jury.
Among the witnesses presented by the state were Ms. Haynes (DNA analyst), Dr. Pena (pediatrician), Dr. Buchsbaum (medical examiner), and Dr. Meadows (psychologist). For each of these witnesses, after eliciting testimony about their qualifications and experience, the prosecutor tendered the witness as an expert in their specific field. Norfleet’s counsel did not object to the tenders, and in the presence of the jury, the trial court declared the witnesses to be experts in their respective fields. For example, the colloquy with respect to Ms. Haynes went as follows:
[PROSECUTOR]: Your Honor, at this time I would tender Ms. Haynes as an expert in the field of STR DNA testing and analysis.
[DEFENSE COUNSEL]: No objection.
THE COURT: All right. Ladies and gentlemen, the witness will be declared to be an expert in the field of DNA testing. That gives her the ability to offer an opinion which would be different than a normal witness who can only testify to an observance or a fact.
*397 The colloquies with respect to the other experts were substantially the same.
On appeal, Norfleet argues that it was fundamental error for the trial court to declare these state witnesses to be experts in front of the jury because the declarations amounted to an impermissible comment by the court on the witnesses’ credibility. In support of this argument, Norfleet relies primarily on Osorio v. State, 186 So.3d 601 (Fla. 4th DCA 2016).
In Osorio, the Fourth District held that it was error for the trial court to declare the expert status of a witness in front of the jury because doing so “confers an imprimatur of authority and credibility, thereby inordinately augmenting the witness’s stature while simultaneously detracting from the court’s position of neutrality.” Id. at 609. We agree. See Whittaker v. State, 742 So.2d 530, 530 (Fla. 1st DCA 1999) (holding that the “the trial court’s sua sponte declaration that [an officer] qualified as an expert constituted an improper comment on the credibility of the witness”); Chambliss v. White Motor Corp., 481 So.2d 6, 8 (Fla. 1st DCA 1985) (explaining that “it is questionable whether it is proper procedure for a court to expressly declare a witness an ‘expert’ because the jury may infer from such declaration that the court is placing its approval on the opinions of the witness”). However, because Norfleet did not object when the prosecutor tendered the witnesses as experts or when the trial court declared them to be experts in front of the jury, reversal is required in this case only if the declarations constitute fundamental error. See Mitchell v. State, 207 So.3d 369, 370 (Fla. 5th DCA 2016) (holding that even if the trial court erred when it declared a state witness to be an expert in front of the jury, the error did not rise to the level of fundamental error).
Fundamental error applies “only in rare cases ... where the interests of justice present a compelling demand for its application.” Smith v. State, 521 So.2d 106, 108 (Fla. 1988). “To be fundamental, an error must ‘reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ” Harrell v. State, 894 So.2d 935, 941 (Fla. 2005) (quoting Brown v. State, 124 So.2d 481, 484 (Fla. I960)); see also Randall v. State, 760 So.2d 892, 901 (Fla. 2000) (“For an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to the denial of due process.”).
Here, we conclude that the trial court’s error in declaring the state witnesses to be experts in front of the jury was not fundamental because we have no doubt that a guilty verdict could have been—and would have been—obtained without these declarations. This conclusion is based on three independent grounds.
First, Norfleet did not dispute that the “whooping” he administered was the cause of his daughter’s death; his defense was insanity.[1] Putting aside the fact that the record reflects that this defense was extremely weak, it is noteworthy that the witness he presented to support the defense (Dr. Waldman) was declared an expert in the same manner as the witnesses presented by the state to rebut that de *398 fense. Specifically, after Norfleet’s counsel “tendered] Dr. Waldman as an expert in the field of forensic psychiatry, neuropsy-chiatry,” the trial court stated: “All right. Ladies and gentlemen, the doctor is declared an expert in that field. We’ve talked about that before. He’ll be able to offer an opinion.” Accordingly, to the extent that the trial court’s declaration of the state’s witnesses as experts bolstered their credibility, the court likewise bolstered the credibility of the main defense witness.
■ Second, each of the trial court’s declarations that a witness was an expert was coupled with a clear and concise explanation that this status merely allowed the witness to offer a different type of testimony than a normal witness. The explanation was consistent with Standard Jury Instruction (Criminal) 3.9—which the trial court read as part of the jury instructions[2] —and significantly mitigates the concern that the jury would view the court’s declaration of the witness as an expert as a positive comment on the witness’ credibility or a wholesale endorsement of the witness’ testimony. Cf. Mitchell, 207 So.3d at 371 (‘We believe that it is overly formalistic to presume that the mere acceptance of a witness as an expert constitutes a comment on the credibility of the witness. This is particularly true given that the jury instructions specifically address, the role of expert witnesses at trial, and juries are presumed to follow their instructions.”).
Third, the case against Norfleet was extremely strong, and the facts testified to by the state’s court-declared experts (other than the psychologist, Dr. Meadows) were largely undisputed. For example, the focus of Ms. Haynes’ testimony was that the victim’s DNA was on the board, but Norfleet .admitted in a post-Miranda statement that he “whooped” the victim with that board nearly 20 times on the day she died. Similarly, the testimony of Drs. Pena and Buchsbaum focused on the severity of the victim’s injuries and the cause of her death, but as defense counsel stated in closing argument, Norfleet was “not disputing that his actions' contributed to [his daughter’s] demise.” Moreover, as noted above, although Dr. Meadows testified about the disputed issue of Norfleet’s sanity, any prejudice resulting,from the trial court’s declaration that he was an expert was offset by the court’s declaration that the defense witness on this issue (Dr. Waldman) was also an expert. Accordingly, under these circumstances, declaring these state witnesses to be experts in front of the jury did not deny Norfleet due process or a fair trial.
For these reasons, Norfleet’s convictions and sentences are AFFIRMED.
RAY and MAKAR, JJ., CONCUR.

. Norfleet justified “whooping” his daughter with a “rod” until it hurt her on his religious views, specifically the Biblical verse that says “the blueness of a wound cleanses away evil.” This “bizarre religious practice” (defense counsel’s words) was central to Norfleet's insanity defense because, as his counsel twice told the jury in closing argument "[n]o sane person would do this to a child.”

, The court instructed the jury as follows:
Expert witnesses as we’ve talked about are like other witnesses with one exception: The law permits an expert witness to give his opinion. However, an expert witness’ opinion is reliable only when given on a subject about which you believe he or she to be an expert. Like other witnesses you may believe or disbelieve all or any part of an expert witness’ testimony,
(emphasis added).